**IN THE SUPREME COURT OF PENNSYLVANIA**
**MIDDLE DISTRICT**


**CASTILLE, C.J., SAYLOR, EAKIN, BAER, TODD, McCAFFERY, STEVENS, JJ.**


| | |
|---|---|
| COMMONWEALTH OF PENNSYLVANIA, | : No. 98 MAP 2013 |
| | : |
| Appellant | : Appeal from the Order of the Chester |
| | : County Court of Common Pleas, Criminal |
| | : Division, dated December 17, 2013 at No. |
| v. | : CP-15-CR-0001260-2013 |
| | : |
| | : |
| KYLE JOSEPH HOPKINS, | : |
| | : ARGUED:  September 10, 2014 |
| Appellee | : |


**OPINION**


**MADAME JUSTICE TODD**                               **DECIDED: June 15, 2015**

In this direct appeal, we address questions regarding the constitutionality and severability of 18 Pa.C.S. § 6317(a) — which imposes a mandatory minimum sentence of two years total confinement upon a defendant for a conviction if a delivery or possession with intent to deliver a controlled substance occurs within 1,000 feet of, *inter alia*, a school — in light of the United States Supreme Court's decision in Alleyne v. United States, 133 S. Ct. 2151 (2013).  In that decision, the United States Supreme Court held that, under the Sixth Amendment to the United States Constitution, a jury must find beyond a reasonable doubt any facts that increase a mandatory minimum sentence.  In the matter *sub judice*, the Commonwealth concedes that certain provisions of Section 6317 are unconstitutional in the wake of Alleyne.  Nevertheless, the Commonwealth submits that those provisions are severable, and, thus, the statute is capable of application once the violative provisions are excised.  While we do not

question the legislature's wisdom or the necessity of severe penalties for those dealing in illegal drugs near our Commonwealth's schools, for the reasons that follow, we are constrained to conclude that the United States Supreme Court's decision in Alleyne renders Section 6317 unconstitutional and, further, that, in light of clear legislative intent, severance of the violative provisions from the statute is not permissible. Thus, we affirm the judgment of the trial court, which held Section 6317 to be unconstitutional and that its violative provisions were not severable.

The factual and procedural background of this matter is as follows. On March 27, 2013, the Pennsylvania State Police filed a criminal complaint against Appellee Kyle Hopkins charging him with various violations of the Controlled Substance, Drug, Device and Cosmetic Act, 35 P.S. §§ 780-101 et seq. The charges arose from three incidents, which took place over three days in April 2012, during which Appellee sold heroin to a confidential informant in Kennett Square Borough and New Garden Township, Chester County, Pennsylvania. One sale allegedly occurred in a school zone. Appellee was held for court on all charges, which included three counts of Possession with Intent to Deliver a Controlled Substance, 35 P.S. § 780-113(a)(30); three counts of Criminal Use of a Communication Facility, 18 Pa.C.S. § 7512(a); three counts of Possession of a Controlled Substance, 35 P.S. § 780-113(a)(16); and three counts of Possession of Drug Paraphernalia, 35 P.S. § 780-113(a)(32). Approximately two weeks later, the Chester County District Attorney's office filed a criminal information charging Appellee with the 12 counts noted above.

Anticipating the Commonwealth would seek the mandatory minimum sentence pursuant to 18 Pa.C.S. § 6317, on October 31, 2013, Appellee filed a Motion for Extraordinary Relief contending Section 6317 was unconstitutional. Judge David Bortner of the Court of Common Pleas of Chester County held a hearing on November

14, 2013. Five days later, the Commonwealth filed an amended criminal information to include notice that the Commonwealth sought the mandatory minimum sentence required by Section 6317. The trial court, however, granted Appellee's motion on December 17, 2013, declaring Section 6317 to be unconstitutional in its entirety.

The trial court reasoned that it was bound by the United States Supreme Court's decision in Alleyne, which held that facts which increase the mandatory minimum sentence are an element of the offense which must be submitted to the jury and found beyond a reasonable doubt. The court opined that Section 6317(b) placed facts determining the applicability of the mandatory minimum sentence in the hands of the sentencing court and that such determination was based upon the preponderance of the evidence in violation of Alleyne. Trial Court Order, 12/17/13, at 1 n.1. The court also rejected the Commonwealth's suggestion that the Alleyne defect could be cured by adding a special interrogatory to the verdict slip. Id. Six days later, the Commonwealth filed a notice of appeal to our Court.[1]

Before our Court, the Commonwealth raises the following issue for our review:

> Whether the trial court erred in concluding that 18 Pa.C.S.A. § 6317, titled, "Drug-Free School Zones", is unconstitutional in its entirety, based upon Alleyne v. United States, where those provisions of § 6317 that do not comply with Alleyne are clearly severable from the remainder of the statute?

Commonwealth's Brief at 5.

---

[1] Our Court has exclusive jurisdiction over appeals from final orders of the courts of common pleas holding a statute unconstitutional. 42 Pa.C.S. § 722(7) ("The Supreme Court shall have exclusive jurisdiction of appeals from final orders of the courts of common pleas in . . . [m]atters where the court of common pleas has held invalid as repugnant to the Constitution, treaties or laws of the United States, or to the Constitution of this Commonwealth, any treaty or law of the United States or any provision of the Constitution of, or of any statute of, this Commonwealth, or any provision of any home rule charter.").

Before considering the arguments of the parties, we set forth a brief background of the law informing this appeal. As discussed more fully below, in 2013, the United States Supreme Court rendered its decision in Alleyne, in which it held that any fact which increases a mandatory minimum sentence is an "element" of the crime, and not a "sentencing factor," and, thus, must be submitted to the jury pursuant to the Sixth Amendment to the United States Constitution.

The focus of the Alleyne challenge in this appeal is Section 6317 of the Crimes Code, entitled "Drug-free school zones" — a statutory provision first enacted in 1997, which sets forth a mandatory minimum sentence of two years total confinement if delivery of, or possession with intent to deliver, a controlled substance occurs within 1,000 feet of a school, college, or playground. Section 6317 states in full:

(a) **General rule.**—A person 18 years of age or older who is convicted in any court of this Commonwealth of a violation of section 13(a)(14) or (30) of the act of April 14, 1972 (P.L. 233, No. 64), known as The Controlled Substance, Drug, Device and Cosmetic Act, shall, if the delivery or possession with intent to deliver of the controlled substance occurred within 1,000 feet of the real property on which is located a public, private or parochial school or a college or university or within 250 feet of the real property on which is located a recreation center or playground or on a school bus, be sentenced to a minimum sentence of at least two years of total confinement, notwithstanding any other provision of this title, The Controlled Substance, Drug, Device and Cosmetic Act or other statute to the contrary. The maximum term of imprisonment shall be four years for any offense:
(1) subject to this section; and
(2) for which The Controlled Substance, Drug, Device and Cosmetic Act provides for a maximum term of imprisonment of less than four years.
If the sentencing court finds that the delivery or possession with intent to deliver was to an individual under 18 years of age, then this section shall not be applicable and the offense shall be subject to section 6314 (relating to sentencing and penalties for trafficking drugs to minors).
(b) **Proof at sentencing.**—The provisions of this section shall not be an element of the crime. Notice of the applicability of this section to the defendant shall not be required prior to conviction, but reasonable notice of the Commonwealth's intention to proceed under this section shall be provided after conviction and before sentencing. The applicability of this

section shall be determined at sentencing. The court shall consider evidence presented at trial, shall afford the Commonwealth and the defendant an opportunity to present necessary additional evidence and shall determine by a preponderance of the evidence if this section is applicable.

(c) **Authority of court in sentencing.**—There shall be no authority for a court to impose on a defendant to which this section is applicable a lesser sentence than provided for in subsection (a), to place the defendant on probation or to suspend sentence. Nothing in this section shall prevent the sentencing court from imposing a sentence greater than that provided in this section. Sentencing guidelines promulgated by the Pennsylvania Commission on Sentencing shall not supersede the mandatory sentences provided in this section. Disposition under section 17 or 18 of The Controlled Substance, Drug, Device and Cosmetic Act shall not be available to a defendant to which this section applies.

(d) **Appeal by Commonwealth.**—If a sentencing court refuses to apply this section where applicable, the Commonwealth shall have the right to appellate review of the action of the sentencing court. The appellate court shall vacate the sentence and remand the case to the sentencing court for imposition of a sentence in accordance with this section if it finds that the sentence was imposed in violation of this section.

18 Pa.C.S. § 6317.

While the present challenge is to the constitutionality of Section 6317, it is axiomatic that, even if certain provisions of a statute are deemed to run afoul of the federal or state Constitution, portions of the statute which are not so offensive may retain their viability through judicial severing of those sections from the sections that are unconstitutional. The General Assembly has expressed its intent with respect to the constitutional construction of statutes, and specifically severability, in Section 1925 of the Statutory Construction Act. 1 Pa.C.S. § 1925. Section 1925 provides:

The provisions of every statute shall be severable. If any provision of any statute or the application thereof to any person or circumstance is held invalid, the remainder of the statute, and the application of such provision to other persons or circumstances, shall not be affected thereby, unless the court finds that the valid provisions of the statute are so essentially and inseparably connected with, and so depend upon, the void provision or application, that it cannot be presumed the General Assembly would have enacted the remaining valid provisions without the void one; or unless the court finds that the remaining valid provisions, standing alone,

are incomplete and are incapable of being executed in accordance with the legislative intent.

1 Pa.C.S. § 1925. With this legal background in mind, we turn to the arguments of the parties.

The Commonwealth first traces the evolution of the United States Supreme Court's case law regarding the constitutional necessity that a jury must consider any fact which increases the penalty for a crime. Offering the presumption that legislative enactments are constitutional, and that a statute will be found to be unconstitutional only if it clearly, palpably, and plainly violates the Constitution, the Commonwealth nevertheless concedes that Alleyne impacts Section 6317's proof at sentencing provision. In sum, the Commonwealth divides Section 6317's provisions into two categories — procedural and substantive — and contends that Alleyne calls into question only the procedural aspects of the statute. Thus, the Commonwealth's core position is not that, when held up against the mandate of Alleyne, the statute is constitutional *in toto*, but, rather, as only certain limited procedural provisions of the legislation run afoul of Alleyne, Section 6317 is severable and the substantive provisions remain viable.

The Commonwealth, noting public policy favors severability, points to the Statutory Construction Act, which offers the presumption of severability, unless either (1) the "valid provisions of the statute are so essentially and inseparably connected with, and so depend upon, the void provision or application, that it cannot be presumed the General Assembly would have enacted the remaining valid provisions without the void one;" or (2) the "remaining valid provisions, standing alone, are incomplete and are incapable of being executed" in accordance with the intent of the legislature. 1 Pa.C.S. § 1925. Building on this provision, the Commonwealth reasons that, with the removal of

the "fact finding provisions" from the statute, the remaining valid provisions, standing alone, are complete and capable of being executed consistent with legislative intent.

Specifically, the Commonwealth suggests that subsection (b) of the statute and the proviso in subsection (a) — "the sentencing court finds that" — which places fact finding in the hands of the sentencing court are all that need to be severed from the statute to render it constitutional under Alleyne. The Commonwealth maintains, consistent with the presumption in favor of severability, that this minor excising of the procedural provisions allows the remaining substantive provisions to be capable of execution in accordance with legislative intent. Related thereto, the Commonwealth claims that to find a lack of severability would be to assume that the General Assembly would not have passed the mandatory minimum sentencing if it knew juries would determine operative facts, and stresses that the laudable goal of the statute was to protect the children in our communities from the evils of the illegal drug trade.

In further support of its severability argument, the Commonwealth urges that special or specific verdicts, which would be required to satisfy Alleyne, should not be rejected by our Court, as disapproving comments concerning special verdicts are either *dicta*, citing Commonwealth v. Samuel, 961 A.2d 57, 63-64 (Pa. 2008), or contained in plurality decisions, citing Commonwealth v. Jacobs, 39 A.3d 977 (Pa. 2012). The Commonwealth adds that the Pennsylvania Criminal Procedural Rules Committee has made proposals to standardize the practice of special verdicts in light of Alleyne, by suggesting amending Pa.R.Crim.P. 648 to allow for special verdicts. Commonwealth's Brief at 33-38 (citing Pennsylvania Bulletin, Volume 43, Number 44, November 2, 2013, at 6490-92). Thus, the Commonwealth concludes that the trial court erred in finding Section 6317 unconstitutional in its entirety, and contends that those provisions of the statute that do not comply with Alleyne are severable from the remainder of the statute.

Appellee responds that Section 6317 is triggered by a factual determination that the drug-related offense was committed within 1,000 feet of a school. Appellee explains that, under Alleyne, proof of the fact which brings about a mandatory minimum sentence must now be considered an "element of a distinct and aggravated crime," for which an accused has the right of a jury trial, application of the standard of proof beyond a reasonable doubt, as well as other protections. Appellee's Brief at 7 (citing Alleyne, 133 S. Ct. at 2162-63). Appellee further contends that, as this determination is now an element of the offense, an accused is entitled to a specific legal and factual allegation both in the complaint and in the information or indictment whenever the Commonwealth seeks a mandatory minimum sentence under Section 6317. According to Appellee, however, the legislature unambiguously provided in Section 6317 that this factual determination was not to be treated as an element of the crime and was to be determined at sentencing.

More specifically, Appellee maintains severability is not permissible as the remaining statutory provisions standing alone are incomplete and incapable of being executed in accordance with legislative intent. Appellee's Brief at 14-15 (citing 1 Pa.C.S. § 1925). Appellee points to six ways in which the provisions of Section 6317 are unconstitutional:

(1) "The provisions … shall not be an element of the crime." Subsection (b);

(2) "Notice of the applicability of this section shall not be required prior to conviction." Subsection (b);

(3) "The applicability of this section shall be determined at sentencing." Subsection (b);

(4) "The [sentencing] court … shall determine … if this section is applicable." Subsection (b);

(5) "The court … shall determine by a preponderance of the evidence if this section is applicable." Subsection (b);

> (6) "If a sentencing court refuses to apply this section where applicable, the Commonwealth shall have the right to appellate review of the actions of the sentencing court. The appellate court shall vacate the sentence and remand the case to the sentencing court for imposition of a sentence in accordance with this section if it finds that the sentence was imposed in violation of this section." Subsection (d).

Id. at 9-10.

Thus, Appellee submits that, if the mandatory minimum is executed in accord with legislative intent, it would violate notice, burden of proof, jury trial, and double jeopardy protections afforded by the Fifth, Sixth, and Fourteenth Amendments to the United States Constitution. Related thereto, Appellee stresses that our Court should not supplement or rewrite statutes, as the legislative power of the Commonwealth is vested in the General Assembly, Pa. Const. art. II, § I, not in the judiciary, and the only way Section 6317 could be cured of its constitutional deficiencies under Alleyne would be if our Court substituted provisions to effectuate the statute, which would be contrary to the plain expressions of the General Assembly.

Appellee develops that the remaining, non-violative provisions of Section 6317 merely offer an intent on the part of the legislature to have a mandatory minimum of two years for drug offenders who commit their crimes near schools, while all of the procedural provisions for executing the statute are unconstitutional, and, thus, the substantive provisions "are incomplete and incapable of being executed in accordance with legislative intent." Appellee's Brief at 14-15 (quoting 1 Pa.C.S. § 1925). Similarly, Appellee rejects the Commonwealth's suggestion that the use of special verdicts could cure the constitutional defects in the statute, as our Court in Samuel rejected a request for mandatory minimum special verdicts. See Samuel, 961 A.2d at 64 ("The proposal of special verdicts in criminal trials to determine what issues the jury actually resolved has been almost universally condemned."). Moreover, Appellee offers that, in any event,

even with the use of special verdicts, the notice and appeal provisions, as noted above, are also unconstitutional, and would not be cured by special verdicts.

Finally, Appellee argues that severability fails under Section 1925 of the Statutory Construction Act, and, specifically, under its alternative basis that "the valid provisions of the statute are so essentially and inseparably connected with, and so depend upon, the void provision or application, that it cannot be presumed the General Assembly would have enacted the remaining valid provisions without the valid one." Appellee's Brief at 20-21 (quoting 1 Pa.C.S. § 1925). According to Appellee, it cannot be presumed that the legislature would have enacted a mandatory minimum sentencing provision to protect children from drug offenses committed near schools if it was forced, as it is under Alleyne, to treat the factual determination as an element of the offense, as evinced by the low standard of proof on the Commonwealth to establish the necessary factual predicate post-conviction — preponderance of the evidence. Appellee posits that, given a choice of a mandatory minimum post-conviction sentencing statute being transformed into an aggravated criminal offense, with the full panoply of pre-trial (specific notice in charging document), trial (proof beyond a reasonable doubt and a jury), and post-trial (double jeopardy) protections, the legislature may have opted for sentencing guidelines as adequate and preferable for enhancing sentences for drug offenses committed near schools. Thus, ultimately, Appellee urges our Court to conclude that the unconstitutional mandatory minimum sentence statute is not severable.

Amicus Defender Association of Philadelphia, in support of Appellee, also sets forth various provisions of Section 6317 that it believes are violative of Alleyne. It elaborates that Section 6317(b) is unconstitutional as it permits the finder of fact, in determining the applicability of the mandatory minimum sentence, to "consider evidence

presented at trial, [and] shall afford the Commonwealth and the defendant an opportunity to present additional evidence." Amicus' Brief at 12-13, 18-19. According to Amicus, as Alleyne instructs that Section 6317 deals with an aggravated crime, evidence of the crime must be presented at trial and not after, and, therefore, as Section 6317 provides for consideration of evidence after trial, it is violative of Alleyne on this basis as well.

Our review of the constitutionality and severability of a statute raises pure questions of law; thus, our standard of review is *de novo* and our scope of review is plenary. In Interest of F.C. III, 2 A.3d 1201, 1213 n.8 (Pa. 2010). Further, statutes enjoy a presumption of constitutionality, and such enactments will not be struck unless they clearly, plainly, and palpably violate the Constitution. Commonwealth v. Omar, 981 A.2d 179, 185 (Pa. 2009). With our standard and scope of review in hand, we turn to resolution of the issues before us.

The Sixth Amendment of the United States Constitution provides that an accused has the right to trial by an impartial jury. U.S. Const. amend. VI. The Constitution mandates that a criminal conviction must "rest upon a jury determination that the defendant is guilty of every element of the crime" in question beyond a reasonable doubt. United States v. Gaudin, 515 U.S. 506, 510 (1995). Since the United States Supreme Court's decision in McMillan v. Pennsylvania, 477 U.S. 79 (1986), however, judges have been able to find "sentencing factors" at post-conviction hearings without running afoul of the jury-trial guarantee. Id. at 81, 85-86, 93. Thus, legislatures were able to differentiate between elements of a crime and sentencing factors in drafting criminal codes. In McMillan, the Court found that a fact was not an element of the offense simply because it created or increased a mandatory minimum sentence, and, thus, that Pennsylvania did not violate the Constitution with its imposition of mandatory

minimum sentences based upon a trial court's determination, by a preponderance of the evidence, that various defendants "visibly possessed a firearm" while committing certain felonies. McMillan, 477 U.S. at 80-93.

In Apprendi v. New Jersey, 530 U.S. 466 (2000), however, the United States Supreme Court held that any fact that increases a defendant's sentence "beyond the prescribed statutory maximum" is an element for the jury, regardless of the legislature's designation. Apprendi, 530 U.S. at 490. While Apprendi spoke to increasing a statutory *maximum* sentence, two years later in Harris v. United States, 536 U.S. 545 (2002), a sharply divided high Court reaffirmed McMillan's conclusion that a fact that increases only a mandatory *minimum* sentence still constitutes a sentencing factor, and, thus, was not mandated to be determined by a jury.

Eleven years later, however, in Alleyne, the Supreme Court overruled Harris and McMillan, reasoning that "Apprendi applies with equal force to facts increasing [a] mandatory minimum." Alleyne, 133 S. Ct. at 2160, 2163. In that case, Allen Ryan Alleyne was charged with various federal crimes including "using or carrying a firearm in relation to a crime of violence" in violation of 18 U.S.C. § 924. That crime carried a five-year minimum sentence if it was found that the defendant "used" a firearm in the commission of the crime, but a seven-year minimum sentence if the defendant was found to have "brandished" the firearm in the course of the crime. The jury determined that Alleyne used the firearm, but did not indicate whether he brandished the firearm in the commission of the crime. The district judge concluded, consistent with Harris, that he could employ a preponderance of the evidence standard and found the weapon had been brandished. Thus, the judge sentenced Alleyne to a seven-year mandatory minimum sentence of imprisonment. The Fourth Circuit Court of Appeals affirmed.

On appeal, in an opinion authored by Justice Clarence Thomas, the high Court reasoned that, under the Sixth Amendment, "[a]ny fact that, by law, increases the penalty for a crime is an 'element' that must be submitted to the jury and found beyond a reasonable doubt." Alleyne, 133 S. Ct. at 2155. A mandatory minimum sentence increases the penalty for a crime, and, thus, the Court held that "any fact that increases the mandatory minimum is an 'element' that must be submitted to the jury." Id. As the judge in Alleyne found "brandishing" by a preponderance of the evidence, which increased the penalty to which Alleyne was subjected, and as such fact was an element which had to be determined by the jury beyond a reasonable doubt, the Court vacated and remanded the matter for resentencing consistent with the jury's verdict. Id. at 2163-64.

In arriving at this conclusion, the Court overruled Harris and McMillan, finding the "distinction between facts that increase the statutory maximum and the facts that increase only the mandatory minimum" was untenable in light of the Court's earlier decision in Apprendi and the Sixth Amendment. Alleyne, 133 S. Ct. at 2155. The Court offered that the "facts increasing the legally prescribed floor *aggravate* the punishment," and, therefore, "the core crime and the fact triggering the mandatory minimum sentence together constitute a new, aggravated crime, each element of which must be submitted to the jury." Id. at 2161 (emphasis original); id. at 2162 ("[w]hen a finding of fact alters the legally prescribed punishment so as to aggravate it, the fact necessarily forms a constituent part of a new offense and must be submitted to the jury."). The Court further opined, with respect to concepts of notice, that "[d]efining facts that increase a mandatory statutory minimum to be part of the substantive offense enables the defendant to predict the legally applicable penalty from the face of the indictment" and

"preserves the historic role of the jury as an intermediary between the State and criminal defendants." Id. at 2161.

Thus, in Alleyne, the United States Supreme Court extended its Apprendi line of cases, overturned its prior decisions in Harris and McMillan, and concluded that, when a factual determination is necessary for the imposition of a mandatory minimum sentence, the facts must be considered an element of a new, distinct aggravated offense. Alleyne, 133 S. Ct. at 2161-63. Moreover, as an element of the offense, the factual determination must be specifically alleged in the charging document, and the defendant has a right to have that fact determined by a jury beyond a reasonable doubt. Id. at 2160-61. The Court, however, drew an important contrast between facts triggering a sentencing minimum and those used in applying sentencing guidelines, emphasizing what the Constitution did not require. The Court stressed that factfinding which increases a statutory minimum "is distinct from factfinding used to guide judicial discretion in selecting a punishment 'within limits fixed by law.'" Id. at 2161 n.2. Thus, the high Court clarified that its decision did not impact "the broad discretion of judges to select a sentence within the range authorized by law." Id. at 2163.

In the matter *sub judice*, and as noted above, the Commonwealth concedes that certain procedural provisions of Section 6317 are unconstitutional in the wake of Alleyne. Nevertheless, the Commonwealth argues that those provisions are severable, and, thus, the statute is capable of application once the violative provisions are excised.

Generally speaking, "unless otherwise specified the individual provisions of all statutes are presumptively severable." Commonwealth v. Williams, 832 A.2d 962, 986 (Pa. 2003). As noted above, the legislature has spoken with respect to its intent regarding severability of statutes in Section 1925 of the Statutory Construction Act. Section 1925 provides that the provisions of a statute shall be severable, but that this

presumption is rebutted when either (1) the valid provisions of the statute are so essentially and inseparably connected with the void provisions that it cannot be presumed the legislature would have enacted the remaining valid provisions without the voided ones; or (2) the remaining valid provisions standing alone are incomplete and incapable of being executed in accord with the intent of the General Assembly. 1 Pa.C.S. § 1925.

Accordingly, we must first review Section 6317 and determine what provisions of the mandatory minimum sentencing statute are violative of Alleyne and then consider whether the statute, applying Section 1925, can survive without those provisions in accord with the intent of the General Assembly.

Initially, Section 6317(a) provides that, "[i]f *the sentencing court* finds that the delivery or possession with intent to deliver was to an individual under 18 years of age, then this section shall not be applicable and the offense shall be subject to section 6314 (relating to sentencing and penalties for trafficking drugs to minors)." 18 Pa.C.S. § 6317(a) (emphasis added). The Commonwealth concedes that this provision, placing in the hands of the sentencing court a factual determination regarding application of Section 6317, is unconstitutional and must be severed from the statute. This provision, like other provisions in 6317(b) discussed below, is inconsistent with Alleyne's dictate that a fact which may increase a penalty must be submitted to a jury, and, for our purposes, evinces an intent on the part of the legislature to make mandatory minimum sentencing independent of a charged offense.

Further, and foundationally, the General Assembly was clear that the mandatory minimum sentencing provisions of Section 6317 were not intended to constitute an element of a crime, and, thus, part of an offense: "The provisions of this section shall not be an element of the crime." 18 Pa.C.S. § 6317(b). The United States Supreme

Court in Alleyne, however, effected a sea change in this area of the law. Under Alleyne's mandate, the mandatory minimum sentencing provision found in Section 6317, together with the core crime, is deemed to be an aggravated offense of drug trafficking with the required fact — here, proximity of the drug activity to a school — constituting an element of the offense. See Alleyne, 133 S. Ct. at 2155 ("Any fact that, by law, increases the penalty for a crime is an 'element' that must be submitted to the jury and found beyond a reasonable doubt."); id. at 2162 ("When a finding of fact alters the legally prescribed punishment so as to aggravate it, the fact necessarily forms a constituent part of a new offense and must be submitted to the jury."). Thus, Alleyne transforms the proximity sentencing factor of Section 6317 into exactly what the General Assembly expressly did not intend — a proximity requirement constituting an element of a new aggravated offense.

Related thereto, Section 6317 provides that "[n]otice of the applicability of this section to the defendant shall not be required prior to conviction, but reasonable notice of the Commonwealth's intention to proceed under this section shall be provided after conviction and before sentencing." 1 Pa.C.S. § 6317(b). This post-conviction notice provision further reveals a legislative intent that the mandatory minimum sentence was not to constitute a brand-new crime, as that would require pre-trial notice. This too is now unconstitutional in light of Alleyne's de jure designation of a new aggravated crime and the concomitant requirement of notice in the charging documents of this new offense. Alleyne, 133 S. Ct. at 2161 ("Defining facts that increase a mandatory statutory minimum to be part of the substantive offense enables the defendant to predict the legally applicable penalty from the face of the indictment").

Further, given Alleyne's designation of a new aggravated offense, Section 6317(b)'s mandate that "[t]he applicability of this section shall be determined at

sentencing" is now void. Related thereto, Section 6317(b) provides "The court shall consider evidence presented at trial, shall afford the Commonwealth and the defendant an opportunity to present necessary additional evidence and shall determine by a preponderance of the evidence if this section is applicable." 18 Pa.C.S. § 6317(b). Thus, the statute not only mandates that the sentencing court shall determine applicability of the mandatory minimum, but that it will do so upon evidence offered both at trial and at sentencing, and by a preponderance of the evidence standard, all of which violate Alleyne's requirement that such factfinding is to be treated as an element of a new aggravated offense, determined by a jury, and by a reasonable doubt standard.

Finally, Section 6317(d) offers that, "[i]f a sentencing court refuses to apply this section where applicable, the Commonwealth shall have the right to appellate review of the action of the sentencing court. The appellate court shall vacate the sentence and remand the case to the sentencing court for imposition of a sentence in accordance with this section if it finds that the sentence was imposed in violation of this section." 18 Pa.C.S. § 6317(d). As Alleyne has rendered factfinding for purposes of Section 6317 to be elements of a new offense and, thus, a determination for the jury, the Commonwealth's right to appeal that fact finding granted by subsection (d), raises serious double jeopardy concerns.

In sum, as detailed above, we find that numerous provisions of Section 6317 are unconstitutional in light of the United States Supreme Court's decision in Alleyne. After Alleyne, these aspects of the statute — that the provisions are declared not to be elements of the offense, that notice is not required prior to conviction, that factfinding is conducted at sentencing, that the sentencing court performs factfinding, that the applicable standard is preponderance of the evidence, and that the Commonwealth has

the right to appeal where the imposed sentence was found to be in violation of the statute — are now infirm. However, the other provisions — specifying the proximity of the drug transaction to a school, and requiring the age of the offender to be over 18 — do not offend the Supreme Court's mandate in Alleyne. Thus, we turn to consider whether the statute can survive without those invalid provisions, with principal focus on the legislature's intent. 1 Pa.C.S. § 1925; Saulsbury v. Bethlehem Steel Co., 196 A.2d 664, 667 (Pa. 1964) ("In determining the severability of a statute or ordinance, the legislative intent is of primary significance.").

Initially, we emphasize that, as a general overarching matter, based upon our review of Section 6317, the General Assembly has unambiguously expressed its intent regarding the nature of this mandatory minimum sentencing statute: it is a *sentencing* statute — the provisions of the statute are not to constitute elements of an offense, notice of its application need not be provided prior to sentencing, and factual determinations triggering its application are to be determined at sentencing. Cf. Samuel, 961 A.2d at 63-64 (addressing two-strikes sentencing statute, 42 Pa.C.S. § 9714(g), and unanimously finding that plain language of statute indicated that sentencing court, and not the jury, must determine whether crime in question was crime of violence; that jury determination would render statute contradictory by redefining the crime with added elements; and that it is the legislature that is charged with defining elements of crimes).[2] Yet, virtually every provision of Section 6317 enacted by the legislature to effectuate this intent runs afoul of the notice, jury trial, burden of proof, and post-trial rights of the accused after Alleyne. These provisions are elaborate, express, and detailed, and are no mere add ons, but, rather, are prominent and central features of the statute. Cf. Commonwealth v. Williams, 832 A.2d 962, 986 (Pa. 2003) (finding

---

[2] As discussed further below, Samuel addressed Section 9714 in a pre-Alleyne context.

severance permissible, as constitutionally infirm portions of Megan's Law II were an "add-on" to the integrated legislative scheme set out in remainder of statute, formed a distinct program, and, absent such provisions, enforcement of the statute was possible). In contemplating the significant rights that come with the United States Supreme Court's marked transformation of sentencing factors into elements of a new aggravated offense, and the resulting evisceration of essential aspects of Section 6317, we find that the unoffending provisions of the statute — the proximity and age requirements — standing alone, are incomplete and incapable of being executed in accordance with legislative intent. 1 Pa.C.S. § 1925. By operation of Alleyne, Section 6317 has been stripped of all the features that allow it to function as a sentencing statute.

Critically, the legislature's expression in Section 6317 that the mandatory minimum sentencing triggers are not to be elements of a crime are clear expressions that the General Assembly did not intend to promulgate in Section 6317 a new aggravated offense. To effectuate the remaining provisions of Section 6317 would require a wholesale reconceptualization of the statute. In short, it cannot be stressed enough that the legislature intended that Section 6317 be a sentencing provision and not a substantive offense. It is for this foundational reason that the Commonwealth's proposed substantive/procedural conceptualization of the statute is inapt.

The Commonwealth asserts the employment of special verdicts — or, as expressed at oral argument, the finding of a general verdict with special interrogatories addressing proximity and age — as a way to cure the constitutional deficiencies in the statute. We disagree. First, nothing in Section 6317 suggests the legislature contemplated such an approach. Second, special verdicts would not cure the notice and appeal provisions of Section 6317 noted above. Specifically, as, under Alleyne, the factual determinations of proximity and age pursuant to Section 6317 would be

elements of a new aggravated offense, the complaint and information/indictment would have to set forth related allegations.  See, e.g., Pa.R.Crim.P. 504, 560.  This notice requirement could not be remedied by the use of special verdicts.  Furthermore, were special verdicts utilized, the provision affording the Commonwealth an appeal would be problematic, as it would suggest the appellate court could *de novo* reassess a jury's determination with respect to proximity and age.

Moreover, in our pre-Alleyne decision in Samuel,[3] our Court, in addressing a two-strikes mandatory minimum sentencing provision virtually identical to Section 6317, rejected special verdicts as a possible tool to allow a jury to render a factual determination for purposes of sentencing.  Specifically, the appellant, Eric Samuel, was sentenced after the Commonwealth sought application of the mandatory two-strike provision in 42 Pa.C.S. § 9714.  Samuel, 961 A.2d at 59-60.  The Commonwealth asserted that a conviction for the burglary of Jamaal Garnett's home constituted a second strike under the statute because the evidence at trial revealed that, when appellant committed the burglary, Garnett was home, in a building adapted for overnight accommodations, which satisfied the definition of a "crime of violence" for purposes of the two-strike statute.  Samuel argued that, because the information did not specify that a person was present during the burglary, and the jury was not specifically asked to render a factual determination in this regard, the burglary conviction could not qualify as a "crime of violence," and should not count as a second strike.  Id.  Nevertheless, the sentencing court made the factual finding that Garnett was home when Samuel entered the premises, and, thus, that his burglary constituted a crime of violence.  Id.

---

[3] While Samuel was decided prior to the United States Supreme Court's decision in Alleyne, it nevertheless is instructive, not only with respect to assessing the legislature's intent that the mandatory minimum sentencing provisions were not to be elements of a crime, but, also, as to the disfavor of special verdicts in criminal trials.

On Samuel's appeal to our Court, we placed particular emphasis on the statute's verbiage, like that in Section 6317 before us, that its mandatory provisions were not elements of the crime and that the statute was not to be applied until sentencing. Thus, we opined that the plain language of the statute indicated the legislature's intent, and that the sentencing court, and not the jury, was to determine whether the crime was a "crime of violence" by the preponderance of the evidence. Samuel, 961 A.2d at 63. Further, we eschewed an interpretation that the burglary-related crime of violence was required to be charged in the information, or necessitated a specific jury finding, as improperly redefining the crime of burglary would be in contradiction to the statutory language mandating that the provisions of Section 9714 shall not be an element of the crime. Id. Of particular relevance to our analysis in the instant matter, we further rejected Samuel's position, concluding that it would require the jury to issue a special verdict with individual interrogatories, noting that this would be contrary to the statutory language that notice of application of the mandatory minimum sentencing was not required prior to conviction, that there was no allowance for special verdicts in criminal trials, and that "[t]he proposal of special verdicts in criminal trials to determine what issues the jury actually resolved has been almost universally condemned." Samuel, 961 A.2d at 64; see also Commonwealth v. Jacobs, 39 A.3d 977, 987 (Pa. 2012) (plurality) ("[T]here is no authority for special verdicts in criminal trials.").[4]

---

[4] The Commonwealth contends our Court's recognition in Samuel that special verdicts are disfavored in criminal trials is *dicta*. We disagree. Special verdicts, as noted above, were deemed to be a requirement for Samuel to obtain relief, and, thus, our Court's rejection of Samuel's suggestion of the use of special verdicts was necessary to our repudiation of his position. More importantly, we recognize that, in the post-Apprendi landscape, courts are reconsidering the proscription against special verdicts in criminal matters, see, e.g., Jacobs, 39 A.3d at 988 (Saylor, J., concurring); but, while the Commonwealth points to proposed amendments to the Pennsylvania Rules of Criminal Procedure which would, if adopted, allow for special verdicts to comply with Alleyne, (continued…)

It is beyond our province to, in essence, rewrite Section 6317 to transform its sentencing commands, whether by utilizing special verdicts or otherwise, into a new substantive offense, contrary to the express legislative intent to the contrary. Thus, we find the unoffending portions of the statute, standing alone, without a wholesale rewriting, are incomplete and incapable of being vindicated in accord with the legislature's intent. 1 Pa.C.S. § 1925.

Our decision in Commonwealth v. Mockaitis, 834 A.2d 488 (Pa. 2003), sharpens the point. In that matter, our Court considered a challenge to a statute which delegated to sentencing courts the responsibility of ordering installation of ignition interlock systems on motor vehicles as a condition precedent to restoration of operating privileges by the Pennsylvania Department of Transportation ("Department") for serial DUI offenders and of certifying to the Department that such systems had been installed. The trial court found these provisions to be unconstitutional on the basis of equal protection, separation of powers, and procedural due process. We agreed with the lower court that the statute's delegation to the judiciary of executive functions was unconstitutional as a violation of the separation of powers doctrine. Id. at 499-502.

Our Court, however, went on, *sua sponte*, to consider whether the statute was severable, and concluded that the statute did not need to be struck in its entirety. In so holding, we explained that, in accordance with legislative intent, recidivist DUI offenders were still required to seek restoration of operating privileges by applying to the Department for an ignition interlock restricted license, and, thus, an administrative

---

(…continued)

such rules, even if adopted, are tangential to discerning the severability of provisions contained in a statute with an express, detailed, and expansive procedure, and, more importantly, in estimating legislative intent.

agency was available to effectuate the remaining portions of the statute.  We stressed that

> the Department - the administrative agency that properly should discharge the executive function that [the statute] delegated to the judiciary -- may employ the remaining valid portions of [the statute] to effectuate the legislative requirement that serial DUI offenders, who can have their driving privileges restored after an automatic one-year suspension, may do so only after securing an 'ignition interlock restricted license' which allows an offender to operate a motor vehicle only if it is equipped with an approved ignition interlock system.

Id. at 490.  Here — unlike in Mockaitis where there already existed a process in place to execute the remaining valid portions of the statute which was consistent with legislative intent — the General Assembly has made clear that the provisions of Section 6317 are not to be elements of the crime and no substitute process can fix that.

In conclusion, we hold, as detailed above, that numerous provisions of Section 6317 are constitutionally infirm under Alleyne.  Moreover, the remaining provisions of Section 6317, standing alone, are incomplete and are incapable of being vindicated in accord with the intent of the General Assembly.  1 Pa.C.S. § 1925.  Because of the significant provisions found to violate the Constitution, which clearly express the intent of the legislature that Section 6317 is a mandatory minimum sentencing statute, and not a substantive offense, we find the remaining unoffending provisions of Section 6317 are incapable of being severed, and we will not judicially usurp the legislative function and rewrite Section 6317 or create a substantive offense which the General Assembly clearly did not desire.  Rather, we leave it to our sister branch for an appropriate

statutory response to the United States Supreme Court's decision in <u>Alleyne</u>.[5]  <u>See</u> <u>Commonwealth v. Kirkner</u>, 805 A.2d 514, 516-17 (Pa. 2002) ("The statute cannot be modified by judicial discretion, no matter how well-intentioned the trial court might be."); <u>Commonwealth v. Wright</u>, 494 A.2d 354, 357 (Pa. 1985) ("[U]nder our system of jurisprudence the legislature is charged with the responsibility of defining the elements of crimes."); <u>see</u> <u>also</u> <u>Commonwealth v. Mazzetti</u>, 44 A.3d 58, 67 (Pa. 2012) (*per curiam*) (finding, in context of Commonwealth being precluded from seeking mandatory sentence at revocation of probation where it did not seek the mandatory sentence at the original sentencing proceeding, "[t]his Court may not supply omissions in a statute [Section 6317]" (internal quotation omitted)); <u>Commonwealth v. Dixon</u>, 53 A.3d 839, 846 (Pa. Super. 2012) (in concluding that a daycare does not constitute a school for purposes of Section 6317, noting that a court has no authority to insert words in the statute not provided by General Assembly).

Finally, and importantly, our decision today in no way impacts the ability of the Commonwealth to convict and sentence those dealing in illegal drugs near our

---

[5]  Indeed, Appellee offers that the legislature may view the alternative of revising the sentencing guidelines to reflect such enhanced sentencing as an adequate and preferable option.  Appellee's Brief at 21.  In this regard, the United States Supreme Court in <u>Alleyne</u> was clear that facts that influenced judicial discretion did not have to be submitted to the jury and that "broad sentencing discretion, informed by judicial factfinding, does not violate the Sixth Amendment."  <u>Alleyne</u>, at 2163; <u>see</u> <u>also</u> <u>Apprendi</u>, 530 U.S. at 481 ("[N]othing in this history suggests that it is impermissible for judges to exercise discretion — taking into consideration various factors relating both to offense and offender — in imposing a judgment within the range prescribed by statute") (emphasis original); <u>United States v. Cassius</u>, 2015 U.S. App. LEXIS 1200, *9-10 (3d Cir. January 27, 2015) (reasoning trial court's finding of larger drug quantity used solely as a sentencing factor to assist in determining defendant's sentence within prescribed statutory range permissible under <u>Alleyne</u>); <u>United States v. Freeman</u>, 763 F.3d 322, 336 (3d Cir. 2014) (same); <u>United States v. Ramirez-Negron</u>, 751 F.3d 42, 49 (1st Cir. 2014) (same).

Commonwealth's schools — it merely limits the imposition of a *mandatory* minimum sentence for those offenders until our legislature acts to address the constitutional requirements imposed by the United States Supreme Court in Alleyne.[6]

The order of the Court of Common Pleas of Chester County is hereby affirmed.

---

[6] In concluding the statute is severable, the dissenters focus almost exclusively on the General Assembly's "manifest" intent in enacting Section 6317 — to impose "mandatory minimum sentences upon those who sell drugs in a school zone," Dissenting Opinion (Stevens, J.) at 5, and "enhanced penalties for drug sales near our schools," Dissenting Opinion (Eakin, J.) at 2. There is no controversy over the legislature's goal in passing Section 6317 or its wisdom in imposing mandatory minimum sentences on those who sell drugs near our schools. However, the intent behind the legislature's passage of Section 6317 is relevant only in the context of the discrete severability analysis under 1 Pa.C.S. § 1925.

With respect to that analysis, as noted above, the United States Supreme Court in Alleyne held that any fact which increases a mandatory minimum sentence is an *element* of the crime which must be submitted to the jury and found beyond a reasonable doubt — i.e., the core crime and the fact triggering the mandatory minimum sentence together constitute a *new aggravated crime*, and the triggering fact must be charged in the indictment as an element of that new crime. Thus, any severability analysis must take into account this transformation of a mandatory minimum sentencing provision into a substantive offense — with the proximity of the sale of drugs to school property being an element of that crime. Here, the General Assembly could not have been clearer that it did not intend to create a new offense, with its attendant notice requirements, when it stated that the provisions of the mandatory sentencing statute "shall not be an element of the crime." 18 Pa.C.S. § 6317(b). Nowhere in either dissent is this critical statement of the legislature's intention mentioned, or accounted for. Nor do they address how special verdicts would account for the notice requirements that are explicit in Alleyne's mandate. Alleyne, 133 S.Ct. at 2161 ("Defining facts that increase a mandatory statutory minimum to be part of the substantive offense enables the defendant to predict the legally applicable penalty from the face of the indictment"). The dissenters' position — effectively converting the remaining valid provisions of the sentencing statute into elements of a new substantive offense — is in direct conflict with the General Assembly's unambiguous intent that these provisions are not to be an element of the crime. While the legislature may rightfully "still want enhanced penalties for drug sales near our schools," Dissenting Opinion (Eakin, J.) at 2, the General Assembly made it equally and abundantly clear that it did not want them to be a substantive offense. Thus, it is for the legislature, not this Court, to devise a response consistent with the Supreme Court's mandate in Alleyne.

Former Chief Justice Castille and former Justice McCaffery did not participate in the decision of this case.

Mr. Chief Justice Saylor and Mr. Justice Baer join the opinion.

Mr. Justice Eakin files a dissenting opinion.

Mr. Justice Stevens files a dissenting opinion.