J-S63022-16

**NON-PRECEDENTIAL DECISION - SEE SUPERIOR COURT I.O.P. 65.37**

| | |
|---|---|
| COMMONWEALTH OF PENNSYLVANIA, | IN THE SUPERIOR COURT OF PENNSYLVANIA |
| Appellee | |
| v. | |
| DARRYL BLACKWELL, | |
| Appellant | No. 2536 EDA 2015 |

Appeal from the PCRA Order July 24, 2015
In the Court of Common Pleas of Philadelphia County
Criminal Division at No(s): CP-51-CR-0219841-1987, CP-51-CR-0303591-1987

BEFORE:  FORD ELLIOTT, P.J.E., SHOGAN and FITZGERALD,[*] JJ.

MEMORANDUM BY SHOGAN, J.:                **FILED NOVEMBER 03, 2016**

Appellant, Darryl Blackwell, appeals from the order denying his serial petition filed pursuant to the Post Conviction Relief Act ("PCRA"), 42 Pa.C.S. §§ 9541-9546.  We affirm.

This Court previously summarized the facts of the crime, as follows:

> Appellant and the victim, June Lane, who was his former girlfriend, lived in separate residences in West Philadelphia.[1]  On November 16, 1986 [A]ppellant lured Ms. Lane into his house on the false pretext that he was repaying a loan owed to her.  Once [A]ppellant had Ms. Lane in his home he punched her, dragged her to the second floor, bound her with an electrical cord, taped her mouth shut, wrapped a tie around her neck and raped her. Appellant threatened to hurt Ms. Lane and members of her family if she told anyone about the crimes.

---

[*] Former Justice specially assigned to the Superior Court.

<sup></sup>¹ The victim initially lived in her grandmother's house in West Philadelphia.

Ms. Lane returned to her grandmother's home in a hysterical state and told her grandmother that [A]ppellant had raped her. The grandmother called her son, who was the victim's uncle, and told him about the rape. He took the victim to a police station and then to the hospital.

Appellant was arrested and when the police searched his house they found the electrical cord, the tape and the tie. Appellant was charged with rape.

Appellant was released on bail on November 21, 1986. After his release he admitted to a friend, Robert Belk, that he had raped the victim. He also told Belk that he should have killed the victim and disposed of the physical evidence that had been subsequently seized by the police. N.T., 2/26/87, at 18.

The victim moved from her grandmother's home to her uncle's home. She appeared at the November 26, 1986 first listing of [A]ppellant's preliminary hearing but the case was continued pursuant to [A]ppellant's request. On December 7, 1986 the victim spent the night at her grandmother's house. The next morning she left to go to work. Appellant was sitting on his front porch, which was located two houses away from the grandmother's home. Appellant confronted the victim on the sidewalk and grabbed her arm. He ordered her not to testify against him. She ran toward her grandmother's porch and [A]ppellant followed her. Appellant produced a .22 caliber revolver and pointed it at the victim. N.T., 5/9/89, at 50. He shot the victim three times, in her head, her face and her hand. Appellant then fled into his home. The victim then staggered to her grandmother's porch and her grandmother helped her into the house.

Appellant barricaded himself in his house and police arrived.² Over several hours police negotiators and a minister attempted to get [A]ppellant to surrender. Appellant was on a second floor landing and threw the .22 caliber revolver to the base of the staircase leading to the second floor. Police then entered the house and found [A]ppellant lying at the top of the staircase; police subsequently determined that [A]ppellant had apparently shot himself twice in his head. Upon discovering

- 2 -

[A]ppellant an officer asked him if he was hurt. Appellant replied, "I f-ked up." N.T., 5/8/89, at 64. The police began to assist [A]ppellant and [A]ppellant stated, "How's the girl?" *Id*. at 65. An officer asked [A]ppellant to whom he was referring. Appellant replied, "The girl I shot." *Id*. Appellant was eventually charged with retaliation against a witness, aggravated assault, possessing an instrument of crime and related charges.[3]

> [2] The police took the victim to the hospital where she underwent emergency brain surgery; she suffered seizures as a result of the surgery.
>
> [3] Appellant underwent emergency surgery and was hospitalized for two weeks. He was then sent to the Psychiatric Unit of Holmesburg Prison in Philadelphia.

The victim was eventually discharged from the hospital. Because of the seizures resulting from the emergency brain surgery the doctors prescribed Dilantin in an attempt to control any possible future seizures. The victim began to have severe headaches and re-entered the hospital. The victim died on January 26, 1987. The medical examiner determined that the cause of death was fulminating hepatitis (with liver failure[4]) caused by the gunshot wounds, the craniotomy (which is a surgical opening of the skull) performed upon her during emergency surgery immediately after the shooting, and, the Dilantin therapy; the manner of death was determined to be homicide. N.T., 5/9/89, at 52.

> [4] The victim had no history of liver problems prior to being shot by [A]ppellant.

***Commonwealth v. Blackwell***, 647 A.2d 915, 917–918 (Pa. Super. 1994).

The PCRA court summarized the procedural history as follows:

On May 9, 1989, [Appellant] entered into a negotiated guilty plea to first-degree murder, possessing an instrument of crime, retaliation against a witness and rape. [Appellant] was thereafter sentenced to life imprisonment for the murder and lesser consecutive sentences for the remaining charges. [Appellant] did not seek to withdraw his plea. He also declined to seek reconsideration of his sentence or to pursue a direct appeal.

- 3 -

On September 18, 1989, [Appellant] filed a PCRA petition. Counsel was appointed and thereafter, the PCRA petition was withdrawn without prejudice on March 12, 1992 to permit [Appellant] to retain private counsel. Rather than obtaining representation, [Appellant] filed another *pro se* PCRA petition on June 9, 1992. Counsel was again appointed and subsequently filed a *Finley*[2] no-merit letter. The PCRA court dismissed [Appellant]'s petition on March 5, 1993. The Superior Court affirmed the dismissal on September 12, 1994.[3] The Pennsylvania Supreme Court denied allocatur on January 17, 1995.[4]

> [2] *Commonwealth v. Finley*, 550 A.2d 213 (Pa. Super. 1988).
>
> [3] *Commonwealth v. Blackwell*, 647 A.2d 915 (Pa. Super. 1994).
>
> [4] *Commonwealth v. Blackwell*, 655 A.2d 509 (Pa. 1995).

On October 7, 2013, [Appellant] filed the instant *pro se* PCRA petition. Pursuant to Pennsylvania Rule of Criminal Procedure 907, [Appellant] was served notice of the lower court's intention to dismiss his petition on June 12, 2015. On July 24, 2015, the PCRA court dismissed his petition as untimely. On August 17, 2015, the instant notice of appeal was filed to the Superior Court.

PCRA Opinion, 9/11/15, at 1–2.[1]

Appellant raises the following questions on appeal:

Is the Appellant's sentence in violation of <u>Alleyne v. U.S.</u>, 133 S.Ct. 2151, 186 L.Ed.2d 314 (2013), which is held a "substantive rule" and must be applied retroactively[?]

---

[1] The PCRA court did not order Appellant to file a statement of errors pursuant to Pa.R.A.P. 1925.

- 4 -

> The U.S. Supreme Court's decision in Alleyne, supra, id., at 2163-64 applies, the ruling renders all [A]ppellant's sentences, 18 Pa.C.S.A. §§ 2502; 907; 3121; 4953 unconstitutional. See, Comm v. Hopkins, 117 A.3d 247, 2015 Pa. LEXIS 1282 in that the mandatory minimum statute allows a trial Judge to determine if the evidence triggers application of mandatory minimum sentence, violating [A]ppellant's rights of 14th Amendment Due Process, 6th Amendment notice and jury trial plus Pa. Const. Art. 1. § 9 rights. Alleyne, is retroactive when any sentencing decisions not based upon prior convictions, and automatically impose maximum sentences on all charges submitted by Prosecution based upon preponderance of evidence standard. Alleyne, id., at 2157; also Comm v. Newman, 99 A.3d 87, 2014 Pa. Super 178 (April 23, 2014).

Appellant's Amended Brief at 4. (emphases in original).[2, 3]

"In reviewing the propriety of an order granting or denying PCRA relief, an appellate court is limited to ascertaining whether the record supports the determination of the PCRA court and whether the ruling is free of legal error." **Commonwealth v. Matias**, 63 A.3d 807, 810 (Pa. Super. 2013) (citing **Commonwealth v. Johnson**, 966 A.2d 523, 532 (Pa. 2009)). This Court is limited to determining whether the evidence of record supports the conclusions of the PCRA court and whether the ruling is free of legal error. **Commonwealth v. Rykard**, 55 A.3d 1177, 1183 (Pa. Super. 2012). We grant great deference to the PCRA court's findings that are supported in

---

[2] While Appellant filed his combination original brief and reproduced record on February 1, 2016, he filed a combined amended brief and reproduced record, by permission, on March 29, 2016.

[3] Appellant's Application for Relief titled, "Letter of Notice," seeking to object to the Commonwealth's late filing of its brief is hereby denied.

the record and will not disturb them unless they have no support in the certified record. **Commonwealth v. Rigg**, 84 A.3d 1080, 1084 (Pa. Super. 2014). "There is no absolute right to an evidentiary hearing on a PCRA petition, and if the PCRA court can determine from the record that no genuine issues of material fact exist, then a hearing is not necessary." **Commonwealth v. Jones**, 942 A.2d 903, 906 (Pa. Super. 2008) (quoting **Commonwealth v. Barbosa**, 819 A.2d 81 (Pa. Super. 2003)). "[S]uch a decision is within the discretion of the PCRA court and will not be overturned absent an abuse of discretion." **Commonwealth v. Mason**, 130 A.3d 601, 617 (Pa. 2015).

The timeliness of a PCRA petition is a jurisdictional threshold that may not be disregarded in order to reach the merits of the claims raised in a PCRA petition that is untimely. **Commonwealth v. Cintora**, 69 A.3d 759, 762 (Pa. Super. 2013). "We have repeatedly stated it is the [petitioner's] burden to allege and prove that one of the timeliness exceptions applies. **See**, **e.g.**, **Commonwealth v. Beasley**, 741 A.2d 1258, 1261 (Pa. 1999). Whether [a petitioner] has carried his burden is a threshold inquiry prior to considering the merits of any claim." **Commonwealth v. Edmiston**, 65 A.3d 339, 346 (Pa. 2013).

In order to be considered timely, a first, or any subsequent PCRA petition, must be filed within one year of the date the petitioner's judgment of sentence becomes final. 42 Pa.C.S. § 9545(b)(1). A judgment of

sentence "becomes final at the conclusion of direct review, including discretionary review in the Supreme Court of the United States and the Supreme Court of Pennsylvania, or at the expiration of time for seeking the review." 42 Pa.C.S. § 9545(b)(3).

As noted, Appellant pled guilty on May 9, 1989, and he did not file a direct appeal. Thus, Appellant's judgment of sentence became final on June 8, 1989, thirty days after the time expired for Appellant to file a direct appeal to this Court. 42 Pa.C.S. § 9545(b)(3). Where the judgment of sentence became final before the effective date of the 1995 amendments to the PCRA, a first petition shall be deemed timely if it was filed within one year of the effective date of the 1995 amendments. *Commonwealth v. Thomas*, 718 A.2d 326, 328 (Pa. Super. 1998); Act of November 17, 1995, P.L. 1118, No. 32 (Spec. Sess. No. 1), § 3(1). "Because the effective date of the amendments is January 16, 1996, the operative deadline for first-time PCRA petitions is January 16, 1997." *Commonwealth v. Voss*, 838 A.2d 795, 799 (Pa. Super. 2003).

Instantly, the current petition is considered to be Appellant's second petition filed pursuant to the PCRA.[4] Thus, Appellant's second PCRA petition,

___

[4] In *Blackwell*, 647 A.2d 915, we stated, "For purposes of this appeal we will treat [A]ppellant's [second and] current PCRA [petition] as his first PCRA [petition], since his initial PCRA petition was withdrawn without prejudice." *Id*. at 919 n.7.

filed twenty-four years after his judgment of sentence became final, is patently untimely as it was not filed until October 7, 2013.

Nevertheless, an untimely petition may be received when the petition alleges, and the petitioner proves, that any of the three limited exceptions to the time for filing the petition, set forth at 42 Pa.C.S. § 9545(b)(1)(i), (ii), and (iii), is met.[5] "That burden necessarily entails an acknowledgment by the petitioner that the PCRA petition under review is untimely but that one or more of the exceptions apply." **Beasley**, 741 A.2d at 1261. "However, the PCRA limits the reach of the exceptions by providing that a petition invoking any of the exceptions must be filed within 60 days of the date the claim first could have been presented." **Commonwealth v. Walters**, 135 A.3d 589, 592 (Pa. Super. 2016) (citing **Commonwealth v. Leggett**, 16

_____

[5] The exceptions to the timeliness requirement are:

> (i)   the failure to raise the claim previously was the result of interference by government officials with the presentation of the claim in violation of the Constitution or laws of this Commonwealth or the Constitution or laws of the United States;
>
> (ii)   the facts upon which the claim is predicated were unknown to the petitioner and could not have been ascertained by the exercise of due diligence; or
>
> (iii)   the right asserted is a constitutional right that was recognized by the Supreme Court of the United States or the Supreme Court of Pennsylvania after the time period provided in this section and has been held by that court to apply retroactively.

42 Pa.C.S. § 9545(b)(1)(i), (ii), and (iii).

A.3d 1144, 1146 (Pa. Super. 2011), and 42 Pa.C.S. § 9545(b)(2)). In order to be entitled to the exceptions to the PCRA's one-year filing deadline, "the petitioner must plead and prove specific facts that demonstrate his claim was raised within the sixty-day time frame" under section 9545(b)(2). *Commonwealth v. Carr*, 768 A.2d 1164, 1167 (Pa. Super. 2001).

The PCRA court appropriately and succinctly addressed Appellant's issue as follows:

> In attempt to satisfy the PCRA's timeliness exception, [Appellant] advanced a claim based upon the new constitutional right announced in *Alleyne v. United States*, 133 S.Ct. 2151 (2013). His petition failed however to satisfy the PCRA time-bar in two distinct, but equally fatal ways; first, his petition failed to invoke the exception within sixty days of the date the claim could have been presented, namely June 17, 2013, the date the United States Supreme Court decided *Alleyne*. His petition was not filed until October 7, 2013, well-beyond the sixty-day mandate.
>
> Second, in the recent decision *Commonwealth v. Miller*, 102 A.3d 988, 995 (Pa. Super. 2014), the Superior Court concluded that "even assuming that *Alleyne* did announce a new constitutional right, neither our Supreme Court, nor the United States Supreme Court has held that *Alleyne* is to be applied retroactively to cases in which the judgment of sentence had become final." Thus, his petition failed to satisfy the "newly recognized constitutional right" exception specified in 42 Pa.C.S. § 9545(b)(iii).[5]
>
> > [5] Nonetheless, *Alleyne* would not provide a basis for relief for his guilty plea to murder based upon his erroneous interpretation that *Alleyne* conveyed a right for a jury determination of the elements of his murder charge. See 907 response, 6/30/15 at 1.

PCRA Opinion, 9/11/15, at 4.

- 9 -

The PCRA court is correct. While this Court has held that **Alleyne** applies retroactively to cases that were on direct appeal when **Alleyne** was issued, we have declined to construe that decision as applying retroactively to cases during collateral review. **Commonwealth v. Ruiz**, 131 A.3d. 54, 58 (Pa. Super. 2015). Indeed, our Supreme Court recently held that "**Alleyne** does not apply retroactively to cases pending on collateral review." **Commonwealth v. Washington**, 142 A.3d 810, 820 (Pa. 2016).

Appellant's judgment of sentence became final on June 8, 1989. **Alleyne** was decided on June 17, 2013. Clearly, Appellant's PCRA petition does not qualify for the new constitutional-right exception to the PCRA time-bar under **Alleyne**.

Therefore, because the instant PCRA petition was untimely and no exceptions apply, the PCRA court lacked jurisdiction to address the claims presented. **See Commonwealth v. Fairiror**, 809 A.2d 396, 398 (Pa. Super. 2002) (holding that PCRA court lacks jurisdiction to hear untimely petition). Likewise, we lack the authority to address the merits of any substantive claims raised in the PCRA petition. **See Commonwealth v. Bennett**, 930 A.2d 1264, 1267 (Pa. 2007) ("[J]urisdictional time limits go to a court's right or competency to adjudicate a controversy.").

Order affirmed.

Judgment Entered.

Joseph D. Seletyn, Esq.
Prothonotary


Date: 11/3/2016