J-S67037-16

**NON-PRECEDENTIAL DECISION - SEE SUPERIOR COURT I.O.P. 65.37**

| | |
|---|---|
| COMMONWEALTH OF PENNSYLVANIA | IN THE SUPERIOR COURT OF PENNSYLVANIA |
| Appellee | |
| v. | |
| RANDY JENRETTE | |
| Appellant | No. 3694 EDA 2015 |

Appeal from the PCRA Order October 26, 2015
In the Court of Common Pleas of Philadelphia County
Criminal Division at No(s): CP-51-CR-0012552-2008

BEFORE:  FORD ELLIOTT, P.J.E., RANSOM, J., and STEVENS, P.J.E.*

MEMORANDUM BY STEVENS, P.J.E.:          **FILED SEPTEMBER 13, 2016**

Appellant Randy Jenrette appeals the order entered in the Court of Common Pleas of Philadelphia County on October 26, 2015, dismissing his first petition filed pursuant to the Post Conviction Relief Act ("PCRA").[1] Following a careful review, we affirm.

A panel of this Court previously set forth the facts and procedural history herein as follows:

> [O]n July 2, 2007, Tyrone Griffin arrived at Einstein Hospital after having suffered multiple gunshot wounds in his leg and ankle.  The hospital notified the Philadelphia Police Department, and Officer John Gallagher proceeded to the hospital to talk with Griffin.  While Griffin initially denied

---

[1] 42 Pa.C.S.A. §§ 9541-46.

*Former Justice specially assigned to the Superior Court.

knowledge of who shot him, he later provided police with a formal statement in which he identified Appellant as his attacker.

Specifically, Griffin told police that on the day he was shot, he went to a store to purchase food and saw Appellant standing outside. When Griffin exited the store and began to walk away, he heard Appellant say, "Yo." Griffin turned around to find Appellant pointing a gun at him. Appellant told Griffin to, "Put your shit down," which prompted Griffin to flee. As Griffin ran away from Appellant, he heard five or six gunshots and was struck in the calf of his right leg and the ankle of his left leg. After giving this statement to police, Griffin drew a map depicting the area where he and Appellant were standing when the shooting occurred. In addition, Griffin participated in a photographic identification session, pointing out Appellant's picture as the man who shot him. Based on Griffin's statement, and identification of Appellant, a warrant was issued for Appellant's arrest. On February 9, 2008, a car in which Appellant was a passenger was stopped and Appellant was asked to identify himself. Appellant gave police five different aliases before they were able to ascertain his true name and take him into custody pursuant to the warrant. Appellant was charged with multiple crimes, including attempted murder.

At Appellant's non-jury trial, the Commonwealth called Griffin to the stand. Despite implicating Appellant as the shooter in his statement to police, Griffin testified that he could not recall many details of the shooting, including who had shot him. When the Commonwealth confronted him with what he had told police, Griffin claimed that he made up that story because the police coerced him into believing that they would help him in an unrelated drug case pending against him. Griffin also testified that the police had forced him to select Appellant's photograph during the identification session.

After Griffin's testimony, the Commonwealth called Detective William Knecht as a witness. Detective Knecht was one of the officers that interviewed Griffin and recorded his formal statement. Detective Knecht testified that during Griffin's interview, no officer even mentioned Griffin's open drug case or promised to assist him in any way. The detective further stated that Griffin was never threatened or coerced but, instead, that he spoke freely about the shooting and had no problem recalling the details of that incident. When asked why he had not told police Appellant was the shooter when he was initially interviewed at the hospital, Griffin replied that he was scared of Appellant and "his people." N.T. Trial, 1/5/10. At 86. Griffin

- 2 -

also told the detective that he had seen Appellant since the shooting, and that Appellant had stated that he and Griffin would "handle it on the street." *Id*. at 85.

In addition to these witnesses, the Commonwealth also introduced into evidence letters that Appellant wrote to another inmate while awaiting his trial. In those letters, Appellant discussed the shooting and made veiled threats against Griffin, who[m] he called a "rat." *See* Trial Court Opinion (T.C.O.), 1/6/11, at 4 (citing N.T. Trial, 1/5/10, at 116-118).

At the close of Appellant's trial, the court found him guilty of attempted murder, aggravated assault, robbery, recklessly endangering another person (REAP), terroristic threats, carrying a firearm without a license, carrying a firearm on a public street, possessing a firearm when prohibited, and possessing an instrument of crime (PIC). On March 30, 2010, Appellant was sentenced to an aggregate term of 15 to 30 years' imprisonment. He filed a timely notice of appeal, as well as a timely concise statement of matters complained of on appeal pursuant to Pa.R.A.P. 1925(b).

*Commonwealth v. Jenrette*, No. 890 EDA 2010, unpublished memorandum at 1-4 (Pa.Super. filed July 7, 2011). Appellant filed a petition for allowance of appeal with the Pennsylvania Supreme Court which was denied on January 18, 2012. *Commonwealth v. Jenrette*, 32 A.3d 259 (Pa. 2012) (Table).

Appellant timely filed the instant PCRA petition, *pro se*, on October 1, 2012. Counsel was appointed and filed an amended petition on April 4, 2014. Appellant retained private counsel whom the PCRA court later removed in an order filed on February 6, 2015. Also in that order, the PCRA court reappointed first PCRA counsel who ultimately filed a motion to withdraw as counsel along with a "no-merit" letter pursuant to *Commonwealth v. Turner*, 518 Pa. 491, 544 A.2d 927 (Pa. 1988) and

*Commonwealth v. Finley*, 550 A.2d 213 (Pa.Super. 1988) (*en banc*) on March 17, 2015.[2] Prior to that time, Appellant retained another attorney, current PCRA counsel, who entered her appearance on March 10, 2015, and disputed former PCRA counsel's conclusions that Appellant's appeal lacked merit. Current PCRA counsel filed a second amended PCRA Petition on April 16, 2015.

On August 20, 2014, the Commonwealth filed a Motion to Dismiss, and Appellant responded thereto on September 24, 2015, wherein he raised an additional claim that our Supreme Court's recent decision in *Commonwealth v. Hopkins*, ____ Pa. _____, 117 A.3d 247 (2015) declared unconstitutional sentences under a weapons enhancement; thus, he posited

_____

[2] These cases establish the procedure for withdrawal of court-appointed counsel in collateral attacks on criminal convictions. Independent review of the record by competent counsel is required before withdrawal is permitted, and such independent review requires proof of:

> 1) A "no-merit" letter by PC[R]A counsel detailing the nature and extent of his review;
> 2) The "no-merit" letter by PC[R]A counsel listing each issue the petitioner wished to have reviewed;
> 3) The PC[R]A counsel's "explanation", in the "no-merit" letter, of why the petitioner's issues were meritless;
> 4) The PC[R]A court conducting its own independent review of the record; and
> 5) The PC[R]A court agreeing with counsel that the petition was meritless.

*Finley,* 550 A.2d at 215.

his sentence was illegal in light of this "newly stated constitutional right." [3] Following its consideration of this and the aforementioned submissions, the PCRA court denied Appellant's PCRA petition without a hearing on October 26, 2015. Appellant timely appealed and filed his concise statement pursuant to Pa.R.A.P. 1925(b) on December 15, 2015. The trial court issued its Rule 1925(a) opinion on March 1, 2016.

In his brief, Appellant sets forth the following Statement of Questions Presented:

> 1. Whether the [c]ourt erred as a matter of law, in that [Appellant] should have been given a hearing on the merits of his PCRA, because it contained genuine issues of fact:

---

[3] In **Hopkins**, our Supreme Court emphasized that:

> when a factual determination is necessary for the imposition of a mandatory minimum sentence, the facts must be considered an element of a new, distinct aggravated offense. Moreover, as an element of the offense, the factual determination must be specifically alleged in the charging document, and the defendant has a right to have that fact determined by a jury beyond a reasonable doubt.

**Commonwealth v. Hopkins**, ___Pa.___, 117 A.3d 247, 256-57 (2015) (citing **Alleyne v. United States**, ___U.S.___, 133 S.Ct. 2152, 2161-63 (2013)). The Court held that 18 Pa.C.S.A. § 6317 which imposed a mandatory minimum sentence for a drug sale or PWID within 1,000 feet of a school was unconstitutional in its entirety, as certain provisions of the statute did not adhere to **Alleyne** and were not severable from the remaining portions of the statute. **Hopkins**, ___ Pa. at ____, 117 A.3d at 262.

a. [W]hether trial counsel was ineffective for the failure to contact an available potential alibi witness?

b. Whether his attorney was ineffective for his broad stipulations at trial, including to incriminating evidence, where the stipulations are so close to an admission of guilt that the constitutional safeguards of a guilty plea should have been in place at trial?

c. Whether other failures of trial counsel raise a material fact prejudicing [Appellant], including the failure to properly cross[-]examine the sole witness to the events, and the failure to inform [Appellant] of his own right to testify?[4]

2. Whether it was incorrect as a matter of law for this [c]ourt to review court-appointed attorney Gary Server's *Finley* no-merit letter and apparently credit it when this attorney had entered her appearance and had refuted the no-merit brief through an amended PCRA?

3. Whether the [t]rial [c]ourt erred in denying Appellant's PCRA petition due to the change in the law as announced by *Com[monwealth] v. Hopkins* [___Pa. _____, 117 A.3d 247 (2015)] regarding the unconstitutional nature of certain sentencing schemes, and if that rule must be retroactively applied?

4. Whether the Federal Court's actions in similar cases have created a precedent that State Courts must follow, allowing retroactive application of this type of sentencing issue?

5. Because *Hopkins* is retroactive, did the trial court make a legal error when it declined to grant Appellant's PCRA?

---

[4] Appellant does not develop a specific challenge to trial counsel's cross-examination of a witness in his appellate brief. Therefore, he has waived this claim. Pa.R.A.P. 2119(a),(b) (requiring a properly developed argument for each question presented including a discussion of and citation to authorities in appellate brief); *Commonwealth v. Buterbaugh*, 91 A.3d 1247, 1262 (Pa.Super. 2014) (*en banc*) (failure to conform to the Rules of Appellate Procedure results in waiver of the underlying issue).

Brief for Appellant at 10-11.[5]

Our standard of review of a PCRA court's dismissal of a PCRA petition is limited to examining whether the PCRA court's determination is supported by the record evidence and free of legal error. *Commonwealth v. Wilson*, 824 A.2d 331, 333 (Pa.Super. 2003) (*en banc*). In addition, it is well settled that a PCRA petitioner is not automatically entitled to an evidentiary hearing, and this Court will review the PCRA court's decision to dismiss a petition without a hearing for an abuse of discretion. *Commonwealth v. Miller*, 102 A.3d 988, 992 (Pa.Super. 2014). The PCRA court may decline to hold a hearing if a petitioner's claim is patently frivolous and unsupported either by the record or other evidence. A reviewing court will examine each issue raised in a PCRA petition in light of the record certified before it to determine if the PCRA court erred in finding that there were no genuine issues of material fact in controversy and in denying relief without conducting an evidentiary hearing. *Commonwealth v. Peeples*, 2016 WL 2348453, at *4–5 (Pa. Super. May 4, 2016).

Appellant initially contends the PCRA court erred as a matter of law in denying his PCRA petition without holding an evidentiary hearing on his ineffective assistance of counsel claims in that they raised genuine issues of

---

[5] In a *Per Curiam* Order entered on May 12, 2016, this Court granted the Commonwealth's request for an extension of time to file a brief. Despite being given until July 12, 2016, in which to file the same, the Commonwealth failed to do so.

- 7 -

fact that could not have been resolved without a hearing. To succeed on a claim of ineffective assistance of counsel, a petitioner must rebut the presumption that counsel rendered effective assistance and prove, by a preponderance of the evidence, that the claim has arguable merit, counsel's action or inaction was not based upon a reasonable trial strategy and he suffered prejudice because of counsel's act or omission. The failure to satisfy any one of these three prongs requires rejection of the petitioner's claim. *Commonwealth v. Williams*, 2016 WL 3908180, at *8 (Pa. July 19, 2016).

Appellant maintains trial counsel had been ineffective for failing to call an alibi witness, Ms. Tiffany McBride-Smith, Appellant's counselor at JFK Behavioral Center (JFK) located on Broad Street in Philadelphia. To obtain relief on this claim, Appellant must establish that:

> the existence of and the availability of the witnesses, counsel's actual awareness, or duty to know, of the witnesses, the willingness and ability of the witnesses to cooperate and appear on the defendant's behalf and the necessity for the proposed testimony in order to avoid prejudice. Moreover, [the a]ppellant must show how the uncalled witnesses' testimony would have been beneficial under the circumstances of the case.

*Commonwealth v. Gibson*, 597 Pa. 402, 441, 951 A.2d 1110, 1133-34 (2008) (internal citations and quotation marks omitted).

Despite Appellant's statements to the contrary, it is apparent from the record that, although the PCRA court did not hold an evidentiary hearing, it carefully and thoroughly examined Appellant's ineffectiveness claim for

failure to call Ms. McBride-Smith as an alibi witness and concluded that it lacked merit. ***See*** PCRA Court Opinion, filed 3/1/16, at 7-10. [6] Specifically, the PCRA court noted Appellant did not garner a signed certification from Ms. McBride-Smith or otherwise establish that she was available and willing to testify for the defense and that the absence of her testimony was prejudicial to him. PCRA Court Opinion, filed 3/1/16, at 8. The PCRA court reasoned that even had Appellant done so, Appellant's recitation of what her testimony would have established consisted of speculative, self-serving assumptions which could not establish that he was unable to commit the crimes for which he had been committed. ***Id***. at 9.[7]

The PCRA court also stressed that former PCRA counsel obtained treatment center logs from JFK along with other records and provided the PCRA court with them for review. While that documentation revealed Appellant did have an appointment with Ms. McBride-Smith at JFK on December 13, 2007, the treatment record she signed indicated his appointment began at 12:00 p.m. and ended at 1:00 p.m., and his entry to

---

[6] Appellant has failed to attach a copy of the PCRA court's opinion to his appellate brief as is required by Pa.R.A.P. 2111(b).

[7] Indeed, Appellant acknowledges the speculative nature of Ms. McBride-Smith's testimony in his brief by admitting that while she informed PCRA counsel she would have been willing to testify, she "was not sure how much information she could actually recall." Brief for Appellant at 25.

the facility was documented at 11:40 a.m. *Id*. at 10 n. 12.[8] The evidence adduced at trial established the shooting occurred sometime between 10:00 a.m. and 10:34 a.m. N.T., 1/5/10 at 14, 82-83. Indeed, in his second Amended PCRA Petition filed on April 16, 2015, Appellant asserts "[t]he alleged incident took place at about 10:34 in the morning on December 13, 2007, at 5621 Devon Street in Philadelphia." *See* Amended Petition for Post Conviction Relief, filed 4/16/15, at ¶4. As such, we agree with the PCRA court's determination there was no verifiable evidence to establish Ms. McBride-Smith would have provided a viable alibi. Because we conclude Appellant has not established prejudice arising out of the absence of Ms. McBride-Smith's testimony or that this evidence would have been beneficial to his defense, we find no error in the PCRA court's decision to dismiss this claim. *Gibson*, 597 Pa. at 441, 951 A.2d at 1133–34.

When examining Appellant's assertion a genuine issue of fact existed concerning whether trial counsel had been ineffective for stipulating to Appellant's authorship of certain letters discovered in a fellow inmate's cell, the PCRA court found that:

> [w]hile these letters were incriminating, [ ] Appellant has never denied authorship of these letters nor did he proffer expert testimony casting doubt upon whether they were written by [ ] Appellant. Moreover, given that the letters reflected a level of intimate familiarity with both Griffin and the case against

---

[8] Copies of these documents appear in the certified record as attachments to first PCRA counsel's motion to withdraw.

Appellant, and that at least one letter contained a statement identifying the author as Appellant himself, trial counsel certainly could not be faulted for agreeing to the stipulation, thereby lessening the amount of time spent at trial actively discussing the letters' damaging substance. *See* N.T. 1/5/10 at 114-18.

Trial Court Opinion, filed 3/1/16, at 11 (emphasis in original). Other than generally claiming trial counsel had no reasonable basis for failing to "investigate the letters" to determine whether "they were obtained through reasonable means[,]" Brief for Appellant at 28, Appellant has not otherwise shown he was prejudiced by counsel's trial strategy. To the contrary, Appellant acknowledged he authored the letters at his sentencing hearing and argued that the words therein were non-threatening "rap lyrics" and "music lyrics." N.T., 3/30/10, at 34. This claim merits no relief.

Finally, Appellant maintains he is entitled to a new trial because he never had been informed of his right to testify in his own defense and reasons that "without any evidence on the record of [his] decision whether or not to testify, then there was effectively no decision and he was denied his right to testify." Brief for Appellant at 31 n. 1. Appellant posits a review of the record reveals he was neither colloquied as to his desire to testify nor provided with an opportunity to do so.

Initially, we note that the trial court was not required to colloquy Appellant concerning his right to testify. **Commonwealth v. Todd**, 820 A.2d 707 (Pa.Super. 2003). Moreover, the record belies Appellant's assertions, for after the Commonwealth rested, the trial court asked defense

- 11 -

counsel whether he would be "putting on evidence" to which counsel responded in the negative. N.T., 1/5/10, at 120. At this juncture in his non-jury trial, Appellant had the option to inform the trial court he wished to testify in his own defense, although he did not do so. In addition, as the PCRA court notes, even had trial counsel failed to inform Appellant of his right to testify in his own defense, Appellant's prior convictions and adjudications revealed at the sentencing hearing provided trial counsel with a reasonable trial strategy basis for declining to put Appellant on the witness stand. **See** N.T., 3/30/10, at 20-25.[9] Thus, after reviewing Appellant's ineffective assistance of counsel claims in light of the certified record, we discern no abuse of discretion in the PCRA court's decision to decline to hold a hearing thereon. **See Miller**, 102 A.3d at 992. Therefore, Appellant's first issue does not merit relief.[10]

Next, Appellant posits the PCRA court erroneously reviewed and "apparently credited" prior PCRA counsel's **Turner/Finley** letter in denying

---

[9] At that time, it was revealed that Appellant, who was twenty-one years old, had been actively involved in felonies for ten years, commencing with his adjudication of a felony of the second degree, robbery with a firearm, at age eleven.

[10] To the extent Appellant states simply that he "layered the claim to his appellate attorney as well," we find his has waived any challenge to Appellate counsel's stewardship for lack of development. **See Commonwealth v. Williams**, 2016 WL 3908180, at *22 (Pa. July 19, 2016) (reaffirming that "an assessment of appellate counsel's ineffectiveness for failing to raise a claim of trial counsel's ineffectiveness involves the same type of proof required for any claim of ineffective assistance of counsel[]").

his PCRA petition because current PCRA counsel previously had entered her appearance. Appellant provides no citation to the record to support his claim and baldy contends the trial court "merely cited to that document as the evidence for denial of the PCRA." Without referencing the PCRA court's Opinion filed on March 1, 2016, Appellant further maintains that current counsel's efforts to "discount the *Finley* letter in the Amended PCRA" have "never been acknowledged by the [PCRA] [c]ourt in any opinion." Brief for Appellant at 32-33. To the contrary, the PCRA court considered Appellant's second Amended PCRA Petition, analyzed each issue Appellant presented in his statement of matters complained of on appeal and indicated in its Rule 1925(a) Opinion that it had found Appellant's second Amended PCRA Petition lacked merit for the multitude of reasons it discussed therein "and not because of any conclusions reached by his former counsel." PCRA Opinion, filed 3/1/16, at 13. Accordingly, we find Appellant's second claim lacks merit.

As Appellant's final three issues are interrelated, we will consider them together. Essentially, Appellant asserts he received an unconstitutional mandatory minimum sentence under our Supreme Court's recent decision in ***Commonwealth v. Hopkins***, ____ Pa. _____, 117 A.3d 247 (2015) because that case established that sentencing enhancements are unconstitutional. Appellant urges that this "newly stated constitutional right," should be applied retroactively herein. Brief for Appellant at 41, 44. Such a challenge

implicates the legality of Appellant's sentence. ***Commonwealth v. Lawrence***, 99 A.3d 116, 123 (Pa.Super. 2014). Issues relating to the legality of a sentence constitute questions of law, and our standard of review over such questions is *de novo* and our scope of review is plenary. ***Commonwealth v. Akbar***, 91 A.3d 227, 238 (Pa.Super. 2014).

Appellant avers he was sentenced under 42 Pa.C.S.A. § 9712(a). Brief for Appellant at 34; however, a review of the record reveals the sentencing court applied a sentencing enhancement to Appellant's sentence in light of his use of a firearm during the commission of the crimes for which he had been convicted. In relying upon ***Alleyne*** and ***Hopkins***, Appellant has conflated mandatory minimum sentences with sentence enhancements; this Court has determined the latter are not affected by the parameters of ***Alleyne*** which are limited to the imposition of mandatory minimum sentences. ***See Commowealth v. Ali***, 112 A.3d 1210, 1226 (Pa.Super. 2015).[11] Therein we found that:

> ***Alleyne*** has no application to the sentencing enhancements at issue in this case. The parameters of ***Alleyne*** are limited to the imposition of mandatory minimum sentences, *i.e.,* where a legislature has prescribed a mandatory baseline sentence that a trial court must apply if certain conditions are met. The sentencing enhancements at issue impose no such floor. Rather,

[11] Our Supreme Court has granted the appellant's petition for allowance of appeal in part to address the following question: "Does a sentencing judge have discretion to consider victim impact evidence where the offense is not a 'crime against a person'?" ***Commonwealth v. Ali***, 127 A.3d 1286 (Pa. 2015).

the enhancements only direct a sentencing court to consider a different range of **potential** minimum sentences, while preserving a trial court's discretion to fashion an individual sentence. By their very character, sentencing enhancements do not share the attributes of a mandatory minimum sentence that the Supreme Court held to be elements of the offense that must be submitted to a jury. The enhancements do not bind a trial court to any particular sentencing floor, nor do they compel a trial court in any given case to impose a sentence higher than the court believes is warranted. They require only that a court consider a higher range of possible minimum sentences. Even then, the trial court need not sentence within that range; the court only must consider it. Thus, even though the triggering facts must be found by the judge and not the jury—which is one of the elements of an **Apprendi** or **Alleyne** analysis—the enhancements that the trial court applied in this case are not unconstitutional under **Alleyne**.

**Commonwealth v. Ali**, 112 A.3d 1210, 1226 (Pa.Super. 2015) (emphasis in original), reargument denied (May 8, 2015), *appeal granted in part*, 127 A.3d 1286 (Pa. 2015).

Herein, after pleading guilty to possessing a controlled substance with intent to deliver and criminal conspiracy in an unrelated case, Appellant received an aggregate term of fifteen years to thirty years in prison.  N.T., 3/30/10, at 50.  Specifically, Appellant was sentenced to ten years to twenty years in prison on the attempted murder conviction, 18 Pa.C.S.A. § 901(a) and a consecutive term of five to ten years for his conviction of Persons not to possess, use, manufacture, control, sell  or transfer firearms.  18 Pa.C.S.A. § 6105.  On his Robbery conviction, 18 Pa.C.S.A. § 3701, Appellant received a concurrent sentence of five years to ten years in prison and three years to six years' incarceration for his conviction of Firearms not

- 15 -

to be carried without a license under 18 Pa.C.S.A. § 6106(a)(1). He received no further penalty on the convictions for Carrying firearms on public streets or public property in Philadelphia, 18 Pa.C.S.A. § 6108, Possession of an instrument of crime, 18 Pa.C.S.A. § 907(a), and Recklessly endangering another person, 18 Pa.C.S.A. § 2705. N.T., 3/30/10, at 48-49.

The sentencing court informed Appellant the offense gravity score on the attempted murder conviction was a thirteen, and with the deadly weapons used enhancement, the sentencing guidelines provided for eighty-four months to one hundred two months, plus or minus twelve. *See* 204 Pa.Code § 303.16; N.T., 3/30/10, at 20. Prior to rendering its sentence, the sentencing court had the benefit of a PSI report, heard extensive argument from both the Commonwealth and defense counsel and permitted Appellant to exercise his right to allocution. N.T., 3/30/10, at 20-46. The sentencing court proceeded to recite on the record its concerns regarding Appellant's long criminal record which included a history of violent offenses, expressed its belief Appellant posed a threat to the public and was likely to reoffend, and highlighted the fact that Appellant shot repeatedly at another person on the city streets in broad daylight which placed the safety of many others at risk. N.T., 3/10/10, at 48. Ultimately, the court accepted the recommendation of the Commonwealth and rendered the aforementioned sentence. *Id*. at 48-49. As such, we find the PCRA court did not err in its

holding the application of the deadly weapon enhancement did not result in Appellant's being given an unconstitutional sentence.

In light of the foregoing, we affirm the PCRA court's order dismissing Appellant's PCRA petition without a hearing.

Order affirmed.

Judgment Entered.

_____
Joseph D. Seletyn, Esq.
Prothonotary


Date: 9/13/2016