J-S30003-16

**NON-PRECEDENTIAL DECISION - SEE SUPERIOR COURT I.O.P. 65.37**

| COMMONWEALTH OF PENNSYLVANIA | IN THE SUPERIOR COURT OF PENNSYLVANIA |
|---|---|
| Appellee | |
| v. | |
| MIKOS MILLER | |
| Appellant | No. 1007 EDA 2015 |

Appeal from the PCRA Order March 31, 2015
In the Court of Common Pleas of Northampton County
Criminal Division at No(s): CP-48-CR-0002208-2005

BEFORE: GANTMAN, P.J., FORD ELLIOTT, P.J.E., and JENKINS, J.

MEMORANDUM BY GANTMAN, P.J.:                    **FILED OCTOBER 18, 2016**

Appellant, Mikos Miller, appeals from the order entered in the Northampton County Court of Common Pleas, which dismissed his first petition filed under the Post Conviction Relief Act ("PCRA").[1] We affirm and grant counsel's petition to withdraw.

This Court previously set forth the relevant facts and convoluted procedural history of this case as follows:[2]

> At approximately 1:00 a.m. on June 6, 2005, Appellant, HyQawnn Wallace, Alex Kulp, and Terrill Gibbs invaded a residence located on 624 Elm Street, Bethlehem, that was

---

[1] 42 Pa.C.S.A. §§ 9541-9546.

[2] We recognize a number of procedural irregularities throughout the history of this case, none of which affects our current jurisdiction. Due to our disposition, we decline to address them.

occupied by nine people. The four cohorts were each armed with a shotgun and also were in possession of one handgun. They bound their victims and terrorized them with the weapons, robbed eight people, placed a gun to the head of a thirteen-year-old boy who was mentally challenged, beat [one victim] with a weapon, ransacked the home, and stole numerous items. During the criminal episode, one of the occupants of the house escaped and contacted police, who arrived while the four perpetrators were still at the scene and in the process of placing [one of the victims] in the trunk of a car. Appellant admitted to police that he was caught red-handed and acknowledged that he would be doing prison time for his actions.

On February 9, 2006, a jury convicted Appellant of eight counts of robbery, nine counts of simple assault, and one count each of aggravated assault, burglary, conspiracy to commit robbery, conspiracy to commit burglary, and conspiracy to commit simple assault. The Commonwealth issued notice of intent to seek the mandatory minimum sentence applicable to the crimes due to the fact that they were committed while Appellant was in visible possession of a firearm. At the March 6, 2006 sentencing proceeding, the court had the benefit of a newly-compiled presentence report, to which Appellant had no corrections. Appellant had a criminal history and self-identified as a member of the Bloods gang.

After consideration of the presentence report, facts of the crime, arguments of counsel, Appellant's failure to display remorse, and all the factors outlined in the Sentencing Code, the court imposed its sentence. Appellant received concurrent sentences of five to ten years imprisonment as to each of the eight robbery convictions. That five-to-ten-year sentence was imposed consecutively to an identical term for burglary. For the aggravated assault [conviction], conspiracy to commit burglary, and conspiracy to commit robbery, Appellant also received five to ten year terms of incarceration, which were all consecutive to one another and the other two sentences already imposed. Finally, the court gave a consecutive sentence of six to twelve months imprisonment as to one count of simple assault. No penalty was imposed on the remaining [conspiracy to commit simple assault conviction. The other eight counts

of simple assault merged for purposes of sentencing.] The total term of incarceration amounted to twenty-five and one-half to fifty-one years.

Appellant's post-sentencing rights were explained, but he did not file a post-sentence motion. Instead, he proceeded to file a direct appeal and challenged the discretionary aspects of his sentence. He failed to comply with the dictates of Pa.R.A.P. 2119(f) by placing in his brief a separate statement of reasons relied upon for the appeal of the discretionary aspects of the sentence imposed. Since the Commonwealth objected to the lack of the statement, we were prohibited from addressing the sole contention raised in that appeal and affirmed. *Commonwealth v. Miller*, 915 A.2d 146 (Pa.Super. 2006) (unpublished memorandum).

Appellant immediately filed a PCRA petition and contended that counsel was ineffective for failing to properly present Appellant's allegation as to the soundness of his sentence. The PCRA court, after conducting a hearing, concluded that counsel was not ineffective because all sentencing challenges were meritless. That PCRA petition was denied by [order docketed on] June 28, 2007. Within one year of our decision in Appellant's direct appeal, Appellant filed a second PCRA petition seeking reinstatement of his appellate rights *nunc pro tunc*. The PCRA court granted him relief on October 5, 2007.

In the ensuing appeal *nunc pro tunc*, Appellant's allegations again pertained to the discretionary aspects of his sentence. We concluded that these averments were not preserved since Appellant did not file a post-sentence motion. *Commonwealth v. Miller*, 963 A.2d 569 (Pa.Super. 2008) (unpublished memorandum). The Supreme Court denied review on January 16, 2009. *Commonwealth v. Miller*, 964 A.2d 2 (Pa. 2009).

On April [1], 2010, Appellant filed a timely *pro se* PCRA petition from his *nunc pro tunc* direct appeal. … Counsel was appointed and amended that petition by requesting the right to file a post-sentence motion *nunc pro tunc*. That relief was granted by the court, and the Commonwealth [did] not challenge that ruling. Appellant

- 3 -

filed his post-sentence motion [*nunc pro tunc*], which was dismissed by an order entered on March 4, 2011. Appellant filed [a *nunc pro tunc*] appeal to this Court on March 25, 2011 from dismissal of his post-sentence motion.

***Commonwealth v. Miller***, No. 1889 EDA 2011, unpublished memorandum at 1-5 (Pa.Super. filed March 8, 2013) (internal footnote and some internal citations omitted). This Court affirmed Appellant's judgment of sentence on March 8, 2013, concluding Appellant's challenges to the discretionary aspects of his sentence merited no relief. ***See id.*** Appellant did not pursue further direct review.

On April 2, 2014, Appellant filed the current counseled PCRA petition, claiming trial counsel was ineffective for: (1) failing to conduct adequate pre-trial investigation to prepare for Appellant's defense; (2) failing to challenge fingerprint evidence presented at trial, or to conduct an independent analysis of the fingerprint evidence; (3) declining to file pre-trial suppression motions challenging the identification of Appellant and Appellant's arrest, or a motion to sever Appellant's case from his co-defendants; and (4) conceding Appellant's guilt during closing arguments. The court held a PCRA hearing on May 2, 2014. On June 17, 2014, the PCRA court denied relief.

In December 2014, Appellant wrote a letter to the Clerk of Courts claiming he had asked PCRA counsel to file an appeal from the denial of PCRA relief, but counsel failed to do so. The court appointed new counsel for

Appellant on January 14, 2015. On March 23, 2015, counsel filed a motion to file a *nunc pro tunc* appeal. In the alternative, counsel asked the court to enter a new "final" order denying PCRA relief from which counsel could timely file an appeal. On March 31, 2015, the court granted Appellant's motion and entered a "final" order re-affirming its June 17, 2014 denial of PCRA relief. Appellant timely filed a notice of appeal on April 14, 2015.[3]

Preliminarily, appellate counsel has filed a **Turner**/**Finley**[4] brief and motion to withdraw as counsel. Before counsel can be permitted to withdraw from representing a petitioner under the PCRA, Pennsylvania law requires counsel to file a "no-merit" brief or letter pursuant to **Turner** and

---

[3] The court did not order Appellant to file a concise statement of errors complained of on appeal pursuant to Pa.R.A.P. 1925(b). Appellant filed a voluntary *pro se* Rule 1925(b) statement, but his filing constitutes a legal nullity because Appellant is still represented by counsel. **See** Pa.R.A.P. 3304 (stating where litigant is represented by attorney before court and litigant submits for filing petition, motion, brief or any other type of pleading in matter, it shall not be docketed but forwarded to counsel of record). **See also Commonwealth v. Ellis**, 534 Pa. 176, 626 A.2d 1137 (1993) (holding there is no constitutional right to hybrid representation at trial or on appeal; this Court will not review *pro se* documents filed by represented appellants); **Commonwealth v. Nischan**, 928 A.2d 349 (Pa.Super. 2007), *appeal denied*, 594 Pa. 704, 936 A.2d 40 (2007) (explaining *pro se* filings submitted by counseled defendants are legal nullities). On August 3, 2015, Appellant filed a *pro se* motion seeking to amend his April 2, 2014 PCRA petition to add a challenge to the legality of his sentence under **Alleyne v. United States**, ___ U.S. ___, 133 S.Ct. 2151, 186 L.Ed.2d 314 (2013), and its progeny. The court entered an order on January 22, 2016, stating it would not entertain the *pro se* filing because Appellant was represented by counsel and not entitled to hybrid representation, and an appeal was pending.

[4] **Commonwealth v. Turner**, 518 Pa. 491, 544 A.2d 927 (1988) and **Commonwealth v. Finley**, 550 A.2d 213 (Pa.Super. 1988) (*en banc*).

*Finley*. *Commonwealth v. Karanicolas*, 836 A.2d 940 (Pa.Super. 2003).

> [C]ounsel must…submit a "no-merit" letter to the [PCRA] court, or brief on appeal to this Court, detailing the nature and extent of counsel's diligent review of the case, listing the issues which the petitioner wants to have reviewed, explaining why and how those issues lack merit, and requesting permission to withdraw.

*Commonwealth v. Wrecks*, 931 A.2d 717, 721 (Pa.Super. 2007). Counsel must also send to the petitioner a copy of the "no-merit" letter or brief and motion to withdraw and advise petitioner of his right to proceed *pro se* or with privately retained counsel. *Id.* "Substantial compliance with these requirements will satisfy the criteria." *Karanicolas, supra* at 947.

Instantly, appellate counsel filed a motion to withdraw as counsel and a *Turner*/*Finley* brief detailing the nature of counsel's review and explaining why Appellant's issues lack merit. Counsel's brief also demonstrates he reviewed the certified record and found no meritorious issues for appeal. Counsel notified Appellant of counsel's request to withdraw and advised Appellant regarding his rights. Thus, counsel substantially complied with the *Turner*/*Finley* requirements. *See Wrecks, supra*; *Karanicolas, supra*.

Appellant raises the following issues in the brief filed on appeal:[5]

> DID [THE] PCRA COURT ERR IN DISMISSING CLAIMS RAISED IN [APPELLANT'S] PCRA PETITION DATED APRIL 2, 2014?
>
> IS [APPELLANT] ENTITLED TO A REMAND FOR SENTENCING BASED ON THE PENNSYLVANIA SUPREME

---

[5] Appellant filed a *pro se* response to counsel's *Turner*/*Finley* brief.

COURT'S DECISION IN ***COMMONWEALTH V. HOPKINS***[, ___ Pa. ___, 117 A.3d 247 (2015)]?

(***Turner***/***Finley*** Brief at 5).

As a second prefatory matter, the timeliness of a PCRA petition is a jurisdictional requisite. ***Commonwealth v. Turner***, 73 A.3d 1283 (Pa.Super. 2013), *appeal denied*, 625 Pa. 649, 91 A.3d 162 (2014). A PCRA petition, including a second or subsequent petition, shall be filed within one year of the date the underlying judgment of sentence becomes final. 42 Pa.C.S.A. § 9545(b)(1). A judgment of sentence is deemed final "at the conclusion of direct review, including discretionary review in the Supreme Court of the United States and the Supreme Court of Pennsylvania, or at the expiration of time for seeking the review." 42 Pa.C.S.A. § 9545(b)(3). Pennsylvania law makes clear that a PCRA petition brought after a *nunc pro tunc* direct appeal is considered a first PCRA petition, and the one-year time clock will not begin to run until the *nunc pro tunc* direct appeal renders the appellant's judgment of sentence final. ***Turner, supra*** at 1286; ***Commonwealth v. Fowler***, 930 A.2d 586, 591 (Pa.Super. 2007), *appeal denied*, 596 Pa. 715, 944 A.2d 756 (2008); ***Commonwealth v. O'Bidos***, 849 A.2d 243, 252 n.3 (Pa.Super. 2004), *appeal denied*, 580 Pa. 696, 860 A.2d 123 (2004).

Instantly, the court reinstated Appellant's post-sentence motion rights *nunc pro tunc* on October 29, 2010, without objection from the Commonwealth. Appellant subsequently filed timely post-sentence motions

*nunc pro tunc*, which the court denied by final order entered March 4, 2011. Appellant timely filed a direct appeal *nunc pro tunc* on March 25, 2011, and this Court affirmed the judgment of sentence on March 8, 2013. Appellant did not pursue further direct review. Thus, Appellant's judgment of sentence became final on April 7, 2013, upon expiration of time to file a petition for allowance of appeal with our Supreme Court. **See** Pa.R.A.P. 1113(a) (stating except as otherwise prescribed by this rule, petition for allowance of appeal with Pennsylvania Supreme Court shall be filed within 30 days after entry of order or judgment sought to be reviewed). Appellant filed the current PCRA petition on April 2, 2014, which is timely. **See** 42 Pa.C.S.A. § 9545(b)(1). This petition constitutes Appellant's "first" PCRA petition following the date Appellant's judgment of sentence became final. **See Turner, supra**; **Fowler, supra**; **O'Bidos, supra**.

Our standard of review of the denial of a PCRA petition is limited to examining whether the record evidence supports the court's determination and whether the court's decision is free of legal error. **Commonwealth v. Ford**, 947 A.2d 1251, 1252 (Pa.Super. 2008), *appeal denied*, 598 Pa. 779, 959 A.2d 319 (2008). This Court grants great deference to findings of the PCRA court if the record contains any support for those findings. **Commonwealth v. Boyd**, 923 A.2d 513, 515 (Pa.Super. 2007), *appeal denied*, 593 Pa. 754, 932 A.2d 74 (2007). If the record supports a post-conviction court's credibility determination, it is binding on the appellate

court. **_Commonwealth v. Knighten_**, 742 A.2d 679, 682 (Pa.Super. 1999), _appeal denied_, 563 Pa. 659, 759 A.2d 383 (2000).

After a thorough review of the record, the briefs of the parties, the applicable law, and the well-reasoned opinion of the Honorable Stephen G. Baratta, we conclude Appellant's first issue merits no relief. The PCRA court opinion comprehensively discusses and properly disposes of that question. (**_See_** PCRA Court Opinion, filed March 31, 2015, at 6-15)[6] (finding: trial counsel testified at PCRA hearing that contesting Appellant's identification and participation was unwise, due to overwhelming evidence that Appellant was at scene of crimes; counsel testified he discussed trial strategy with Appellant to present defense as "drug deal gone bad," and Appellant agreed with this strategy; Appellant offered no alibi witnesses; court credited counsel's testimony; Appellant failed to show counsel lacked reasonable basis in pursuing chosen strategy, so this ineffectiveness claim fails; additionally, counsel testified trial strategy was consistent with co-defendant's strategy, so motion to sever was not necessary; counsel explained any pre-trial motions concerning identification would have been unsuccessful based on amount of evidence against Appellant and agreed-upon trial strategy; counsel's testimony was credible; Appellant cannot show

---

[6] The PCRA court refers to the current April 2, 2014 petition as Appellant's third PCRA petition. We have already decided this petition constitutes Appellant's first PCRA petition for timeliness purposes, given the _nunc pro tunc_ relief granted in this case.

prejudice to support ineffectiveness claims concerning counsel's failure to file pre-trial motions; Appellant also claims counsel failed to interview key Commonwealth witnesses and failed to test fingerprint evidence linking Appellant to crimes; counsel testified Appellant was involved in every step of decision-making process, and Appellant did not ask counsel to interview certain witnesses or to test fingerprint evidence independently because Appellant agreed to pursue "drug deal gone bad" trial strategy; Appellant did not indicate how interviews of Commonwealth's witnesses would have changed outcome of trial or produce any alibi witnesses for counsel to interview; counsel's decision not to test fingerprint evidence was reasonable trial strategy, which Appellant agreed to; this ineffectiveness claim fails). Therefore, we affirm Appellant's first issue on the basis of the PCRA court's opinion.

In his second issue, Appellant argues the trial court imposed mandatory minimum sentences in this case pursuant to 42 Pa.C.S.A. § 9712 (stating any person who is convicted of crime of violence shall be sentenced to mandatory minimum five years' imprisonment if, during commission of offense, person visibly possessed firearm that placed victim in reasonable fear of death or serious bodily injury).[7] Appellant claims the jury did not

_____

[7] Although Appellant cites **Hopkins, supra** in his statement of questions presented, that case dealt with a mandatory minimum sentence under 18 Pa.C.S.A. § 6317 (imposing mandatory minimum sentence of two years'
*(Footnote Continued Next Page)*

expressly find beyond a reasonable doubt that Appellant visibly possessed a firearm during commission of the crimes, so imposition of the mandatory minimum sentences violates **Alleyne, supra** (holding any fact increasing mandatory minimum sentence for crime is considered element of crime to be submitted to fact-finder and found beyond reasonable doubt). Appellant insists the mandatory minimum sentences imposed in his case are unconstitutional in light of **Alleyne** and its progeny. Appellant concludes he is serving an illegal sentence and entitled to resentencing without imposition of the mandatory minimum sentences. We disagree.

Preliminarily, we observe that Appellant raised his **Alleyne** challenge for the first time in his August 3, 2015 *pro se* motion to amend his PCRA petition. Appellant's *pro se* filing constitutes a legal nullity because he was represented by counsel when Appellant filed it. **See** Pa.R.A.P. 3304; **Ellis, supra**; **Nischan, supra**. Additionally, Appellant's appeal from the denial of PCRA relief was already pending when he filed this motion. **See Commonwealth v. Lark**, 560 Pa. 487, 746 A.2d 585 (2000) (holding that when appellant's PCRA appeal is pending before court, subsequent PCRA petition cannot be filed until resolution of review of pending PCRA petition by highest state court in which review is sought, or upon expiration of time for seeking such review).

*(Footnote Continued)* ⎯⎯⎯⎯⎯⎯⎯⎯

imprisonment if defendant committed drug delivery in school zone). Section 6317 is inapplicable in this case.

Recently in *Commonwealth v. Washington*, ___ Pa. ___, 142 A.3d 810 (2016), the Pennsylvania Supreme Court resolved the issue of whether a petitioner could raise an *Alleyne* challenge to the legality of his sentence involving a mandatory minimum sentence in a timely PCRA petition, where the petitioner's judgment of sentence became final prior to the *Alleyne* decision. The *Washington* Court stated:

> [A] new rule of law does not automatically render **final**, **pre-existing** sentences illegal. A finding of illegality concerning such sentences may be premised on such a rule only to the degree that the new rule applies retrospectively. In other words, if the rule simply does not pertain to a particular conviction or sentence, it cannot operate to render that conviction or sentence illegal. …
>
> \*   \*   \*
>
> [N]ew constitutional procedural rules generally pertain to future cases and matters that are pending on direct review at the time of the rule's announcement.

*Id.* at ___, 142 A.3d at 814-15 (emphasis added). *See also id.* at ___, 142 A.3d at 815 (stating: "[I]f a new constitutional rule does not apply, it cannot render an otherwise final sentence illegal"). The *Washington* Court applied the retroactivity analysis delineated in *Teague v. Lane*, 489 U.S. 288, 109 S.Ct. 1060, 103 L.Ed.2d 334 (1989), and determined the new constitutional rule announced in *Alleyne* is not a substantive or watershed procedural rule that would warrant retroactive application. *Washington, supra* at ___, 142 A.3d at 818-19. The Court held the defendant was not entitled to retroactive application of *Alleyne* because his judgment of sentence became

final before *Alleyne* was decided. *Id.*

Instantly, the court sentenced Appellant on March 6, 2006, imposing mandatory minimum sentences for some of Appellant's offenses, pursuant to Section 9712. Due to the grant of *nunc pro tunc* relief multiple times throughout the history of this case, Appellant's judgment of sentence became final on April 7, 2013. The United States Supreme Court decided *Alleyne* on June 17, 2013, more than two months **after** Appellant's judgment of sentence was already final. **See Alleyne, supra**. Consequently, Appellant is not entitled to relief under *Alleyne* at this juncture. **See Washington, supra** (holding *Alleyne* does not apply retroactively on collateral review to challenge to mandatory minimum sentence as "illegal"). Thus, Appellant's second issue merits no relief. Following our independent examination of the record, we conclude the appeal is frivolous and affirm; we grant counsel's petition to withdraw.[8]

Order affirmed; counsel's petition to withdraw is granted.

---

[8] Our disposition addresses all issues presented in Appellant's *pro se* response to appellate counsel's **Turner**/**Finley** brief, so we need not further discuss any of those claims. To the extent Appellant complains PCRA counsel was ineffective for failing to preserve the **Alleyne** challenge in Appellant's April 2, 2014 PCRA petition, that claim is meritless in light of our disposition. Additionally, Appellant filed an application for appointment of new counsel for this appeal. We deny Appellant's request.

Judgment Entered.

Joseph D. Seletyn, Esq.
Prothonotary


Date: 10/18/2016

IN THE COURT OF COMMON PLEAS OF NORTHAMPTON COUNTY
COMMONWEALTH OF PENNSYLVANIA
CRIMINAL DIVISION

COMMONWEALTH OF PENNSYLVANIA :
                                  :       **No. CR-2208-2005**

               **v.**                       :

**MIKOS MILLER,**                    :

                             :

           **Defendant**  :

## ORDER OF COURT

**AND NOW**, this 2/ day of March, 2015, upon consideration of Defendant's, Mikos Miller, *Nunc Pro Tunc* Petition to Perfect Appeal, said petition is hereby **GRANTED**. This Court hereby reaffirms the Order entered on June 17, 2014, denying Miller's petition for relief filed pursuant to the Post-Conviction Relief Act (PCRA), 42 PA.CONS.STAT.ANN. §§ 9541-9546.

## STATEMENT OF REASONS

### Factual Background and Procedural History

This is the Miller's third PCRA filing. On February 9, 2006, a jury convicted Miller of one count of Aggravated Assault (F2), 18 PA.CONS.STAT.ANN. § 2702(a)(4); three counts of Conspiracy (F1), 18 PA.CONS.STAT.ANN. § 903(a)(1); eight counts of Robbery (F1), 18 PA.CONS.STAT.ANN. § 3701(a)(1)(ii); one count of Burglary (F1), 18 PA.CONS.STAT.ANN. § 3502(a)(1); and nine counts of Simple Assault (M2), 18 PA.CONS.STAT.ANN. § 2701(a)(3). On March 6, 2006, the Honorable William F. Moran sentenced Miller to an aggregate period of twenty-five and one half (25½) to fifty-one (51) years' imprisonent.

With regard to the criminal episode in this case, the record shows that on June 6, 2005, Miller and three co-defendants invaded a residence on 624 Elm Street, Bethlehem, Northampton County, Pennsylvania, which was occupied by nine people. The co-conspirators were each armed with shotguns and possessed one handgun. After entering the house, they bound the victims and terrorized them with weapons. They then placed a gun to the head of a thirteen-year-old boy with mental disabilities, "pistol-whipped" one of the victims, ransacked the residence and stole numerous items. One of the victims escaped during the alleged robbery and called the police. The police arrived while the assailants were still present and in the process placing a victim into a car trunk. The assailants then fled the crime scene. The police identified and arrested Miller approximately one block away from the residence and discovered certain items that were stolen from the residence during the arrest.

Although Miller did not file any post-sentence motions, he filed a direct appeal challenging the discretionary aspects of sentencing. The Superior Court of Pennsylvania determined that Miller had failed to place in his brief a separate statement of reasons relied upon for the appeal of the discretionary aspects of sentence pursuant to Pa.R.A.P. 2119(f). As a result, the Superior Court refused to address the sole issue raised in the appeal and affirmed Judge Moran's sentence.

On January 22, 2007, Miller filed his first PCRA petition, in which he asserted that trial counsel was ineffective for failing to properly prosecute his appeal of the discretionary aspects of his sentence. This Court denied PCRA relief on June 28, 2007. On July 25, 2007, Miller filed a Motion for Leave to File Appeal *Nunc Pro Tunc*, in which he sought to reinstate his appellate rights. After a hearing, Judge Moran granted that

2

relief on through an Order and Statement of Reasons filed on October 5, 2007. Miller filed an appeal *nunc pro tunc* regarding the discretionary aspects of sentencing. The Superior Court affirmed Miller's judgment of sentence on September 17, 2008, finding that the issue had not been preserved due to Miller's failure to file a post-sentence motion. On January 16, 2009, the Supreme Court denied *allocatur.*

Miller filed a second PCRA on April 1, 2010. In an amended petition, filed on July 26, 2010, Miller sought a reinstatement of his right to file post-sentence motions. On October 25, 2010, with no objection from the Commonwealth, this Court granted the petition, reinstating Miller's right to file post-sentence motions. Miller filed a Post-Sentence Motion on November 4, 2010. Judge Moran denied and dismissed the Post-Sentence Motion without a hearing on February 24, 2011, and issued a Corrected Order on March 4, 2011. Miller appealed this decision to the Superior Court on March 25, 2011. On March 8, 2013, the Superior Court affirmed the sentence.

On April 2, 2014, Miller filed the instant PCRA Petition. As Judge Moran has since retired from his commission, this case was reassigned to the undersigned. In his PCRA Petition, Miller raises claims that were not proffered in his first two PCRA petitions. Now, Miller asserts that he was denied his right to effective assistance of counsel, as guaranteed by Article I, Section 9 of the Pennsylvania Constitution, and the Sixth and Fourteenth Amendments of the United States Constitution. Specifically, he argues that:

(1) Trial counsel failed to conduct a pretrial investigation or adequately prepare to defend the Defendant;

(2) Trial counsel failed to challenge alleged fingerprint evidence and/or conduct independent testing of fingerprint evidence which was introduce[d] by the Commonwealth at trial;

3

(3) Trial counsel failed to file pretrial motions, including motions challenging the identification of the defendant, motions to exclude evidence obtained as 'fruits' of an unlawful arrest and a motion to sever the trial of the instant Defendant and other defendants on the basis of antagonistic defenses;

(4) Trial counsel was ineffective in conceding Defendant's guilt during closing argument without previously discussing with the Defendant and obtaining the Defendant's consent to such trial strategy.

**See** Petition for Post Conviction Collateral Relief, 04/02/14, at 2.

Because this third PCRA was brought within one year of the final order affirming the discretionary aspects of the original sentence and it raised new claims of ineffective assistance of counsel, we entertained the new claims.

On May 2, 2014, a PCRA hearing was held, in which both Miller and trial counsel, Bohdan Zelechiwsky, Esquire, testified. Miller testified that he had limited awareness of the evidence against him before trial, as he had seen trial counsel only a few times before going to trial and the fingerprint evidence had not been produced until approximately two days before trial. As such, he argued that trial counsel had failed to adequately prepare for trial, as trial counsel had not thoroughly investigated certain witnesses and the evidence. He also asserted that trial counsel had failed to file certain pretrial motions, including a motion challenging the identification of the witnesses, a suppression motion on the theory of an unlawful arrest, and a motion to sever his trial from that of his co-defendant. Additionally, Miller complained that trial counsel had conceded his guilt using the same strategy as his co-defendant, that of a "drug deal gone bad."

In response, trial counsel argued that he had met with Miller on multiple occasions and reviewed the facts of the case carefully with the petition as soon as he

4

received discovery. Trial Counsel testified that given the heinous nature of the crimes committed and the evidence against Miller, Miller had chosen a strategy that arguably had the highest probability of success. Trial Counsel reflected that this strategy had been chosen after the receipt of discovery. Further, counsel noted that no alibi witnesses were suggested and no other defense was presented, other than Miller was at the scene and that it was not a robbery but rather a "drug transaction gone bad." Miller and his co-defendant were of one mind with regard to the trial strategy.

Further, trial counsel stated that Miller had been highly involved and outspoken during trial preparation, and had not requested that trial counsel file any of the motions suggested in his current PCRA Petition, including a motion to sever or to challenge Miller's identification. Additionally, trial counsel testified that it made sense to try Miller and his co-defendant together, as they shared the same trial strategy. Due to the trial strategy, trial counsel chose not to interview the eyewitnesses or independently test the fingerprint evidence, as the trial strategy acknowledged Miller's presence at the scene. Further, Miller offered no alibi witnesses.

On May 14, 2014, Miller submitted his "Brief in Support of Motion for Post-Conviction Collateral Relief." On May 29, 2014, the Commonwealth submitted its "Brief in Response to Defendant's Petition for PCRA Relief." On June 17, 2014, this Court entered an Order denying PCRA relief.

On July 2, 2014, upon the retirement and resignation of Miller's PCRA counsel from the conflicts counsel team, Brian M. Monahan, Esquire was appointed to represent Miller. Upon finding the existence of a conflict of interest with Attorney Monahan, this Court appointed Christopher M. Brett, Esquire to represent Miller on July 11, 2014.

5

Attorney Brett failed to file an appeal from this Court's order of June 17, 2014. Attorney Brett has since been placed on administrative suspension. We appointed counsel to represent Miller in his PCRA hearing of May 2, 2014 and during the appellate period in conformance with Pa.R.Crim. P. 904. The Superior Court of Pennsylvania interpreted Rule 904 in **Commonwealth v. Jackson**, 965 A.2d 280 (Pa. Super. 2009) as requiring the following: "if the appointment of counsel is deemed necessary for purposes of conducting an evidentiary hearing, then the petitioner requires the assistance of counsel throughout the litigation of the issue. Such litigation necessarily includes the appeals process." According to Miller's letter of December 29, 2014, no appeal was filed despite Miller's desire to pursue appellate relief. Therefore, we were bound under Rule 904 to appoint new counsel for Miller, as he required the assistance of counsel for purposes of appeal. This Court appointed James F. Brose, Esquire to represent Miller. The time for filing an appeal from our June 17, 2014 order has since elapsed. In order to permit counsel to perfect Miller's appeal rights with respect to the denial of his PCRA petition, we hereby enter this Order denying his PCRA.

## Legal Standard

Counsel is presumed to be effective; the burden of proving otherwise rests with the petitioner. **See Commonwealth v. Cox**, 983 A.2d 666, 678 (Pa. 2009). Generally, "where matters of strategy and tactics are concerned, counsel's assistance is deemed constitutionally effective if he chose a particular course that had some reasonable basis designed to effectuate his client's interest." **Commonwealth v. Puksar**, 951 A.2d 267, 277 (Pa. 2008). Further, "[c]ounsel's performance is presumed constitutionally adequate, and will be deemed ineffective only upon a petitioner's three-pronged

6

showing that counsel's ineffectiveness was such that, 'in the circumstances of the particular case, [it] so undermined the truth-determining process that no reliable adjudication of guilt or innocence could have taken place." ***Commonwealth v. Dennis***, 950 A.2d 945, 954 (Pa. 2008) (quoting ***Commonwealth v. Rios***, 920 A.2d 790, 799 (Pa. 2007)).

In order for a petitioner to prevail on his claims of ineffective assistance of counsel, the petitioner must plead and prove, by the preponderance of the evidence, three elements: "(1) the underlying legal claim has arguable merit; (2) counsel had no reasonable basis for his or her action or inaction; and (3) [the petitioner] suffered prejudice because of counsel's action or inaction." ***Commonwealth v. Hutchison***, 25 A.3d 277, 285 (Pa. 2011) (citing ***Commonwealth v. Pierce***, 527 A.2d 973 (Pa. 1987)). The failure of a petitioner to satisfy any of the prongs set forth above requires a rejection of the ineffectiveness claim. ***See Dennis***, 950 A.2d at 954.

Under the first prong, if a claim lacks merit, the court's inquiry ceases, as counsel will not be deemed ineffective for failing to pursue a baseless or meritless issue. ***See Commonwealth v. Johnson***, 588 A.2d 1303, 1305 (Pa. 1991). In order to prove the second prong of this test ("the Pierce standard"), the "reasonable basis" prong, a petitioner must prove that "an alternative not chosen offered a potential for success substantially greater than the course actually pursued." ***Hutchison***, 25 A.3d at 285 (citing ***Commonwealth v. Williams***, 899 A.2d 1060, 1064 (Pa. 2006). In order to establish the third prong of the test, a petitioner must prove "that there is a reasonable probability that the outcome of the proceedings would have been different but for counsel's action or inaction." Id.

7

The petitioner's abstract allegations of ineffectiveness will not be considered. *See Commonwealth v. DeHart*, 650 A.2d 38, 43 (Pa. 1994). Instead, "a petitioner must allege actual prejudice and be able to identify a specific factual predicate that demonstrates how a different course of action by prior counsel would have better served his interest." Id. Further, "an evaluation of counsel's performance is highly deferential, and the reasonableness of counsel's decision cannot be based upon the distorting effects of hindsight." *Commonwealth v. Basemore*, 744 A.2d 717, 735 (Pa. 2000).

## Discussion

### A.    Trial Strategy

First, Miller alleges that trial counsel was ineffective because he chose and pursued a strategy under which Miller's guilt was not contested. Miller argues that he is not guilty of the crimes for which he was convicted, and that trial counsel's strategy resulted in a guilty verdict. Trial Counsel's strategy, which was apparently based on the discovery and formed after discussion with Miller, was to admit Miller's presence at the scene of the crime, but to also frame it as a "drug transaction gone wrong." Essentially, Miller argues, the trial strategy was tantamount to admitting his guilt, because questions as to his identity and involvement in the crime were not contested.

We note Miller did not identify any alleged alibi witnesses, nor did he present a summary of anticipated testimony by his alibi witnesses.

In determining whether counsel's acts or omissions were reasonable, defense counsel is accorded broad discretion to determine tactics and strategy. *See Commonwealth v. Thomas*, 744 A.2d 713, 717 (Pa. 2000). We find that the cases of

8

*Commonwealth v. Johnson*, 815 A.2d 563 (Pa. 2002) and *Commonwealth v. Lofton*, 292 A.2d 327 (Pa. 1972) are instructive in determining whether an admission of guilt can constitute a reasonable defense strategy. In both of those cases, the Supreme Court of Pennsylvania found that defense counsel had a reasonable basis for pursuing the trial strategy and, as a result, the claim of ineffective assistance of counsel failed.

In *Johnson, supra*, defense counsel chose to not present diminished capacity evidence because it did not promote his defense strategy: that the co-defendant had shot the victims instead. *See Johnson* 815 A.2d at 576-77. Defense counsel deemed that an investigation into the diminished capacity would not promote his trial strategy, because the only credible defense based on the evidence was to admit partial participation but to deny that the defendant had the motive to kill the victims and to promote the idea that his client had stopped facilitating the commission of the crime prior to the shootings. *See id*. The Supreme Court of Pennsylvania found that defense counsel had a reasonable basis for the strategy chosen, and therefore he was not ineffective for failing to present diminished capacity evidence. *See id*. at 578-79.

In *Lofton, supra*, another homicide case, defense counsel chose a trial strategy conceding a degree of guilt. Defense counsel in that case conceded that the defendant was guilty of first degree murder in the face of overwhelming evidence. *Lofton*, 292 A.2d at 330. Instead, defense counsel concentrated on avoiding the death penalty by casting the defendant as only a "lookout" for the other felons and by arguing that the defendant did not reasonably believe that a killing would occur during the robbery. *See id*. The Supreme Court of Pennsylvania found that: "While we believe that a concession by counsel at a degree of guilt hearing that his client is guilty of first degree

9

murder should be offered only with the utmost of caution and only in those cases where the evidence to that effect is truly overwhelming, we cannot conclude on this record that [defendant's] counsel's strategy lacked any 'reasonable basis.'" *Id.* As a result, the *Lofton* court rejected the defendant's ineffective assistance of counsel claim. *See id.*

Similarly, in the instant case, trial counsel testified at the PCRA hearing that based upon the evidence uncovered during discovery and a careful review of the facts with Miller, it would be ineffective to argue that Miller was not present at the scene of the crime. Trial Counsel testified that the evidence uncovered included (1) the identification of the Miller by the police and the victims of the crime, in part based upon an easily identifiable hairstyle (an "afro"), and (2) items belonging to the victims found with the Petitioner at the time of arrest, approximately one block away from the house, after the assailants had allegedly fled the residence. Later, the Commonwealth made trial counsel aware of fingerprint evidence that linked Miller to the scene of the crime. Further, trial counsel submitted that the heinous nature of the crime would make contesting identity and guilt a dangerous strategy during sentencing. Finally, trial counsel testified that he had carefully reviewed the evidence with Miller, who agreed that this strategy gave him the highest probability of success based on the evidence. We find trial counsel's testimony to be credible.

We also find that Miller has failed to show that trial counsel lacked a reasonable basis for pursuing this trial strategy. Here, Miller has not proven by the preponderance of the evidence that "an alternative not chosen offered a potential for success substantially greater than the course actually pursued." *Williams*, 899 A.2d at 1064. Further, Miller apparently agreed with the strategy throughout pretrial activities and his

10

trial. He cannot prove ineffective assistance of counsel by merely showing that, in hindsight, the trial strategy chosen did not produce the desired result. As a result, we find that Miller has failed to prove his ineffective assistance of counsel claim.

## B. Pretrial Motions

Miller also asserts that trial counsel failed to file pretrial motions, chiefly, that he failed to file a motion to sever his trial from that of his co-defendant. In his brief, Miller contends that: "Given the co-defendant's admissions, his defense, while not entirely antagonistic, was certainly inconsistent with the [Petitioner's] contention that he had nothing to do with the criminal activity." Brief in Support at 7. Miller thus argues that a motion to sever should have been filed because the trial strategies for him and his co-defendant were inconsistent.

At the PCRA hearing, however, trial counsel testified that Miller had understood and agreed with the trial strategy throughout pretrial discussions, jury selection and the trial. Further, trial counsel stated that the defense strategies of Miller and the co-defendant were in line with each other, and that he therefore did not deem a motion to sever necessary based on the coinciding trial strategies. Additionally, trial counsel testified that any motions questioning Miller's identification by multiple victims would be ineffective, given the weight and nature of the evidence against Miller, including fingerprints, the timing of the arrest and Miller's easily-identifiable afro. We find this testimony to be credible.

Miller has not shown that the result of the trial would have been different had trial counsel filed these motions by the preponderance of the evidence, failing to establish prejudice, the third prong of the *Pierce* standard. Further, trial counsel has shown that

11

the course of action chosen, to not file the motions suggested by Miller during his most recent PCRA hearing, complied with the agreed-upon trial strategy. Therefore, we find that Miller's ineffective assistance of counsel claims against trial counsel must fail.

## C.     Trial Preparation

With regard to PCRA claims of ineffective assistance of counsel, our Supreme Court has found that: "Counsel has a duty to undertake reasonable investigations or to make reasonable decisions that render particular investigations unnecessary." *Basemore*, 744 A.2d at 735 (citing *Strickland v. Washington*, 466 U.S. 668, 691 (1984)). Further, "[w]here counsel has made a strategic decision after a thorough investigation of law and facts, it is virtually unchallengeable; strategic choices made following a less than complete investigation are reasonable precisely to the extent that reasonable professional judgment *supports* the limitation of the investigation." *Id.* This evaluation of counsel's performance is "highly deferential" and the evaluation of the reasonableness of the decisions "cannot be based upon the distorting effects of hindsight. *Id.* Additionally, "reasonableness in this context depends, in critical part, upon the information supplied by the defendant." *Id.* As a result, if counsel is not given notice of particular mitigating evidence, he cannot be found ineffective for failing to pursue that piece of evidence. *See id.*

Here, Miller claims ineffective assistance of counsel because trial counsel failed to adequately prepare for trial. Miller submits that trial counsel failed to interview key Commonwealth witnesses and independently test fingerprint evidence that linked him to the home robbery. Further, Miller claims that he was not involved in the process of

12

determining a trial strategy, as trial counsel failed to adequately review discovery with him.

In response, trial counsel testified at the PCRA hearing that he met with Miller on multiple occasions and that Miller was involved in every step of the decision making process. Further, trial counsel asserts that that Miller never requested that he interview those witnesses or independently test the evidence, as Miller wished to pursue the strategy that the criminal event was not a robbery but rather a "drug transaction gone wrong."

Miller asserts that under *Commonwealth v. Dennis*, 950 A.2d 945 (Pa. 2008), trial counsel was ineffective for failing to investigate potential alibi witnesses, failing to interview witnesses who had identified him, and failing to prepare an independent investigation of the fingerprints found at the scene of the crime. In *Dennis*, a homicide case, our Supreme Court examined whether counsel was ineffective for failing to investigate eyewitnesses and a possible alibi witness, as well as for failing to discover evidence related to the murder weapon. *Dennis*, 950 A.2d at 957. The court discussed cases in Pennsylvania which stand for the proposition that "at least where there is a limited amount of evidence of guilt, it is *per se unreasonable* not to attempt to investigate and interview known eyewitnesses in connection with defenses that hinge on the credibility of other witnesses." *Id.* at 960 (emphasis in original). Such an omission is not, however, is not *per se* prejudicial. *See id.* The *Dennis* court found that the defendant had failed to properly plead and prove that trial counsel's failure to interview certain witnesses and vet a potential alibi witness, and therefore that his claim of ineffectiveness of counsel lacked arguable merit. *See id.* at 961-64.

13

Similarly, we find here that the claim of ineffective assistance of counsel based upon the failure to interview eyewitnesses lacks arguable merit. At the PCRA hearing, Miller testified that he wished to challenge the identification of him by eyewitnesses, as he argued that their identifications were not wholly independent. In response, trial counsel argued that he did not interview the witnesses because of the wealth of evidence against Miller and because such interviews would not have contributed to his trial strategy. Miller did not offer the testimony of any of the witnesses, nor state how such interviews would have changed the outcome of the trial. Further, Miller did not mention any alibi witnesses to trial counsel, nor did he present any evidence regarding any such witnesses at his PCRA hearing. As such, we find that these claims lack arguable merit.

With regard to Miller's claim of inadequate trial preparation based on the failure of trial counsel to independently test the fingerprint evidence, we find that such a decision was reasonably based on the trial strategy employed. Miller agreed continuously to this strategy throughout pretrial discussions, jury selection and the trial. As the strategy did not attack Miller's presence at the crime scene, Trial Counsel cannot be held ineffective for failing to independently investigate that evidence. Again, Miller also failed to present evidence at the hearing to show by the preponderance of the evidence that an independent investigation by trial counsel with regard to the fingerprint evidence would have produced a different result. We find that this claim lacks arguable merit.

14

Accordingly, Miller's claims of ineffective assistance of counsel must be rejected, as Miller has failed to establish ineffective assistance of counsel by the preponderance of the evidence.

BY THE COURT:

STEPHEN G. BARATTA, P.J.

15