J-S48033-19

**NON-PRECEDENTIAL DECISION - SEE SUPERIOR COURT I.O.P. 65.37**

| | | |
|---|---|---|
| COMMONWEALTH OF PENNSYLVANIA, | : | IN THE SUPERIOR COURT OF PENNSYLVANIA |
| | : | |
| Appellee | : | |
| | : | |
| v. | : | |
| | : | |
| DYSHAN AURSBY, | : | |
| | : | |
| Appellant | : | No. 1029 EDA 2018 |

Appeal from the PCRA Order March 28, 2018
in the Court of Common Pleas of Philadelphia County
Criminal Division at No(s):  CP-51-CR-0001044-2012

BEFORE:   BOWES, J., SHOGAN, J. and STRASSBURGER, J.*

MEMORANDUM BY STRASSBURGER, J.:            **FILED OCTOBER 17, 2019**

Dyshan Aursby (Appellant) appeals from the order entered March 28, 2018, dismissing his petition filed under the Post Conviction Relief Act (PCRA), 42 Pa.C.S. §§ 9541-9546. Upon review, we affirm.

In a prior appeal, this Court summarized the facts leading up to charges being filed against Appellant.

> These charges arose out of a dispute over drug sales between Appellant and the victim, Danny Williams ("Williams"). On May 22, 2011, between 1 [a.m.] and 2 [a.m.], Appellant, co-defendant, Clarence Burbage ("Burbage"), and Rakeem Divers ("Divers"), attacked Jerry Holloman ("Holloman"), also known as "Mike". Appellant, Burbage, and Divers asked Holloman where Williams was and Holloman told them that Williams was with his girlfriend, Delisha Foy ("Foy"), at her house. Appellant, Burbage, and Divers told Holloman to call Williams on the phone. When Holloman hesitated, Burbage took Holloman's phone and called Williams. The three men held Holloman at gunpoint as they walked to Foy's house on South 66th Street to see Williams. When they

_____
* Retired Senior Judge assigned to the Superior Court.

arrived at Foy's home, Holloman was told to stand at the door while Appellant, Burbage, and Divers hid. When Williams opened the door, Holloman yelled "run." Williams attempted to slam the door shut but Burbage headed inside before the door closed. Holloman ran down the alleyway across the street from Foy's home while Appellant and Divers followed Burbage into the home. As Burbage, Appellant, and Divers went into the home, Williams ran up the stairs to the second floor. Williams then jumped out of a second floor window, hit the ground, and began limping away. Appellant and Divers followed Williams, Appellant drew a gun, and fired it at Williams, striking Williams in his left buttock. Burbage told Foy, who was in the house at the time of the incident, that Williams "robbed his young bull," then Burbage took money off of a table downstairs before leaving.

After Appellant, Burbage, and Divers left, Holloman found Williams laying [*sic*] on the ground and stayed with him until the police arrived. Williams was taken to the Hospital of the University of Pennsylvania (HUP). That same day, Williams was interviewed inside HUP and told Detective Maurizio that Appellant, whom he referred to as "Sha," and Burbage, whom Williams referred to as "C Murder" shot him. Based on the identifications made by Williams and Holloman, arrest warrants were filed for Appellant and Burbage. At approximately 10:20 P.M. on May 22, 2011, Philadelphia Police Officers McLaughlin and McKiernon arrested Appellant. [Appellant was charged with, *inter alia*, attempted murder, aggravated assault, robbery, and conspiracy.]

***Commonwealth v. Aursby***, 122 A.3d 1134 (Pa. Super. 2015) (unpublished memorandum at 1) (quoting Trial Court Opinion, 8/5/2014, at 2–3).

Five days later, on May 27, 2011, Williams was shot to death. Burbage was arrested in connection with both the attempted murder of Williams on May 22, 2011, and the subsequent murder of Williams on May 27, 2011. On February 7, 2012, the Commonwealth filed two notices in Appellant's case: 1) it advised Appellant that the Commonwealth intended to try him and Burbage together at trial, and 2) it advised Appellant that it would be seeking a

mandatory-minimum sentences pursuant to 42 Pa.C.S. §§ 9712 (relating to offenses committed with firearms) and 9714 (relating to second and subsequent offenses).

On April 25, 2012, Appellant filed a motion to sever his case from that of Burbage. According to Appellant, "[t]he evidence of [] Williams' murder by [] Burbage would not be admissible in a separate trial for [Appellant]. Presenting evidence of the murder in the joint trial of Burbage and [Appellant] for the attempted murder would create confusion and prejudice that could not be constrained by any jury instruction." Motion to Sever, 4/25/2012, at ¶ 5 (capitalization altered). The trial court denied the motion on May 31, 2012.

Appellant and Burbage were tried jointly, and on May 31, 2013, Appellant was found guilty of, *inter alia*, attempted murder, aggravated assault, robbery, and conspiracy.[1] On July 26, 2013, Appellant was sentenced to 7½ to 15 years of incarceration for attempted murder, and a consecutive 5 to 10 years of incarceration for robbery, resulting in an aggregate sentence of 12½ to 25 years of incarceration. Appellant timely filed a post-sentence motion, which was denied by operation of law on December 4, 2013. Appellant timely filed a notice of appeal to this Court. On June 17, 2015, this Court affirmed Appellant's judgment of sentence, and on December 30, 2015,

_____

[1] In addition, Burbage was found guilty of first-degree murder, aggravated assault, robbery, conspiracy, and possession of an instrument of crime.

- 3 -

our Supreme Court denied Appellant's petition for allowance of appeal. ***Aursby***, ***supra***, *appeal denied*, 130 A.3d 1285 (Pa. 2015).

On June 6, 2016, Appellant *pro se* timely filed a PCRA petition. Counsel was appointed, and amended petitions were filed on March 22 and May 10, 2017. On February 28, 2018, the PCRA court filed notice of its intent to dismiss Appellant's petition without a hearing. Appellant filed a response, and on March 28, 2018, the PCRA court dismissed Appellant's petition. Appellant timely filed a notice of appeal to this Court.

On May 24, 2018, the PCRA court issued an order pursuant to Pa.R.A.P. 1925(b), ordering Appellant to file a concise statement of errors complained of on appeal within 21 days. Pa.R.A.P. 1925(b) Order, 5/24/2018. Appellant filed a concise statement on August 16, 2018.[2] On January 7, 2019, the PCRA court filed its opinion pursuant to Pa.R.A.P. 1925(a).

On appeal, Appellant has set forth two issues for our review. We begin with Appellant's contention that his 5-to-10-year sentence imposed for robbery is illegal pursuant to ***Alleyne v. United States***, 570 U.S. 99 (2013) (holding that "[a]ny fact that, by law, increases the penalty for a crime is an 'element' that must be submitted to the jury and found beyond a reasonable doubt"), and ***Commonwealth v. Hopkins***, 117 A.3d 247 (Pa. 2015) (holding

---

[2] Appellant filed his Pa.R.A.P. 1925(b) statement well after the 21-day deadline. However, we need not remand to remedy this *per se* ineffective assistance of counsel because the PCRA court has addressed the issues in its opinion. ***See Commonwealth v. Brown***, 145 A.3d 184 (Pa. Super. 2016).

a statute unconstitutional where it requires imposition of a mandatory-minimum sentence for certain crimes related to controlled substances occurring within 1,000 feet of a school pursuant to **Alleyne**).[3] **See** Appellant's Brief at 8-9.

"Upon reviewing an order in a PCRA matter, we must determine whether the findings of the PCRA court are supported by the record and whether the court's legal conclusions are free from error." **Commonwealth v. Montalvo**, 205 A.3d 274, 286 (Pa. 2019). "[T]his court applies a *de novo* standard of review to the PCRA court's legal conclusions." **Id**. "We must keep in mind that the petitioner has the burden of persuading this Court that the PCRA court erred and that such error requires relief." **Id**.

Instantly, the PCRA court concluded Appellant is not entitled to relief because the record "**explicitly confirms that a mandatory[-]minimum sentence was not applied**." PCRA Court Opinion, 1/7/2019, at 6 (emphasis in original). Our review of the record reveals that the Commonwealth provided notice to Appellant that it was seeking a mandatory-minimum sentence pursuant to 42 Pa.C.S. §§ 9712 and 9714. Notice of Mandatory Minimum Sentence Case, 2/7/2012. However, upon review of the Appellant's sentencing order and the sentencing transcript, we agree with the PCRA court that Appellant was not sentenced to a mandatory-minimum sentence. The

---

[3] **Alleyne** was decided on June 17, 2013, and Appellant was sentenced on July 26, 2013. Thus, there is no question that to the extent Appellant was sentenced to a mandatory-minimum sentence, **Alleyne** is applicable.

words mandatory-minimum sentence appear nowhere in the sentencing transcript. *See* N.T., 7/26/2013. In addition, Appellant's sentencing commitment form does not have the box checked indicating a mandatory-minimum sentence. Order, 7/26/2013, at 2. Because Appellant has not persuaded this Court that he was actually sentenced to a mandatory-minimum sentence or that the PCRA court erred, we agree with the PCRA court that Appellant is not entitled to relief on his illegal-sentencing claim.

We now consider Appellant's second claim, where he asserts the PCRA court erred in dismissing his petition because counsel was ineffective for failing to raise on appeal the issue that the trial court erred in denying the motion to sever. *See* Appellant's Brief at 10-13. We review such a claim mindful of the following.

A claim challenging counsel's failure to raise an issue on direct appeal is governed under the three-prong ineffective-assistance-of-counsel test. *See Commonwealth v. Lesko*, 15 A.3d 345, 395-96 (Pa. 2011). "[T]o succeed on an ineffectiveness claim, a petitioner must establish that: the underlying legal claim has arguable merit; counsel had no reasonable basis for [his or] her action or inaction; and the petitioner suffered prejudice as a result." *Commonwealth v. King*, 47 A.3d 607, 613 (Pa. 2012). "To demonstrate prejudice, the petitioner must show that there is a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different." *Id*. (internal quotation marks omitted). "A reasonable

probability is a probability sufficient to undermine confidence in the outcome of the proceeding." *Id*. In addition, "[f]ailure to prove any prong of this test will defeat an ineffectiveness claim." ***Commonwealth v. Fears***, 86 A.3d 795, 804 (Pa. 2014).

Our rules provide that "[d]efendants charged in separate indictments or informations may be tried together if they are alleged to have participated in the same act or transaction or in the same series of acts or transactions constituting an offense or offenses." Pa.R.Crim.P. 582(A)(2). "The decision whether to sever trials of co-defendants is within the sound discretion of the trial court and will not be disturbed on appeal absent a manifest abuse of that discretion." ***Commonwealth v. Lopez***, 739 A.2d 485, 501 (Pa. 1999). "The critical factor that must be considered is whether the accused has been prejudiced by the trial court's decision not to sever." *Id*. "The accused bears the burden of establishing such prejudice." *Id*. Moreover, we point out that "[j]oint trials are advisable whenever defendants are alleged to have participated in the same series of acts or transactions and where conspiracy is charged." *Id*. at 502.

Instantly, there is no question that Appellant and Burbage were appropriately tried together with respect to the May 22, 2011 assault, as they were charged with conspiracy in connection with the attempted murder of Williams. The issue then, is whether Appellant was prejudiced by the inclusion of the murder charges against Burbage for a crime that occurred while

Appellant was incarcerated. It is Appellant's position that he was prejudiced because "the jury was able to use evidence of what happened 5 days later to infer that [Appellant] intended to kill the victim 5 days before." Appellant's Brief at 13.

"For a defendant to be found guilty of attempted murder, the Commonwealth must establish specific intent to kill." *Commonwealth v. Geathers*, 847 A.2d 730, 734 (Pa. Super. 2004). "Specific intent to kill … can be inferred from the use of a deadly weapon upon a vital part of the victim's body." *Commonwealth v. Jordan*, 65 A.3d 318, 323 (Pa. 2013).

In his direct appeal, Appellant argued that the evidence was insufficient to sustain his conviction for attempted murder because he only fired one shot and did not attempt to kill Williams in doing so. This Court rejected that claim as follows.

> Appellant's claim that he only fired one shot; and therefore, he did not attempt to kill [Williams] is without merit. Holloman testified that he watched as [A]ppellant ran down the street, drew his gun, and shot the fleeing unarmed victim. The bullet struck [Williams] in his left buttock and lodged in his pelvis, where it remained permanently. Appellant did not need to fire more shots or have a better aim and cause a more severe injury to prove he acted with the intent to kill. Shooting the fleeing victim and striking him with a bullet was sufficient.

*Aursby*, 122 A.3d 1134 (unpublished memorandum at 6).

Based on the foregoing, it is evident that the jury did not have to make any inferences from Burbage's murder of Williams on May 27, 2011, to infer that Appellant had specific intent to kill Williams on May 22, 2011. There was

ample evidence from testimony about Appellant's actions on May 22, 2011, for the jury to reach the conclusion that Appellant had the specific intent to kill Williams when Appellant fired his gun at Williams. Thus, Appellant has not convinced this Court that he was prejudiced by the trial court's denying the motion to sever. *Lopez*, 739 A.2d at 502 (holding that "absent any showing that [Lopez] was actually prejudiced by the trial court's refusal to grant [Lopez's] motion to sever, we find no abuse of discretion on the part of the trial court"). Accordingly, counsel was not ineffective for failing to include this issue on direct appeal, as the outcome of the direct appeal would not have been different. *See Commonwealth v. Blakeney*, 108 A.3d 739, 750 (Pa. 2014) ("To establish [] prejudice in the appellate representation context, the petitioner must show that there is a reasonable probability that the outcome of the direct appeal proceeding would have been different but for counsel's deficient performance."). Accordingly, we agree with the PCRA court that Appellant is not entitled to relief.

Because Appellant has not convinced this Court the PCRA court erred in any respect, we affirm the order of the PCRA court.

Order affirmed.

Judgment Entered.

Joseph D. Seletyn, Esq.
Prothonotary


Date: <u>10/17/19</u>